**NATIONAL TENANTS ORGANIZA-
TION, INC., et al., Plaintiffs,**

**v.**

**DEPARTMENT OF HOUSING AND UR-
BAN DEVELOPMENT et al.,
Defendants.**

**Civ. A. No. 974–70.**

United States District Court,
District of Columbia,
Civil Division.

May 3, 1973.

Wesley S. Williams, Jr., Washington, D. C., for plaintiffs.

William H. Schweitzer, Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This is a class action in which public housing tenants claim that their landlord, the Department of Housing and Urban Development, is overcharging them rent in violation of the United States Housing Act (herein USHA). The United States Housing Act of 1937, 50 Stat. 888, as amended, 42 U.S.C. § 1401 et seq. Since 1969 all public housing rents have been limited to one-fourth

of "family income." The gravamen of this case is what deductions are necessary in arriving at the definition of "family income."

Plaintiffs contend that the 1970 amendment to the statute made the following deductions mandatory and cumulative: an amount equal to "$300 for each secondary wage earner" and "$300 for each dependent." Housing and Urban Development Act of 1970, 84 Stat. 1770, 42 U.S.C. § 1402(1). They claim that this money was set aside by Congress for necessities. HUD, however, maintains that the dependency deduction does not encompass heads of households or spouses and that the secondary wage earner deduction does not include dependents. HUD's version of deductions, contained in its 1971 Circular, results in a higher "family income" and corresponding rent.

The case is submitted on cross motions for summary judgment and there are no material facts in dispute. For the reasons set forth below, this Court holds that the deductions contained in the 1970 Act are mandatory and cumulative; that the 1971 HUD circular, as amended, is unlawful; and, accordingly, that plaintiffs are entitled to judgment as a matter of law.

Before reaching the merits, it is necessary to consider whether plaintiffs have the right to bring this action and whether this Court has jurisdiction to decide it. On the latter point, defendants contend that agency expertise has always been solicited on the question of income definition and that the Court should defer to the agency here. McKinney v. Washington, 143 U.S.App. D.C. 4, 442 F.2d 726 (1970). However, the suggestion overlooks the fact that both sides have approached this case as one purely of Congressional intent and defendants have made no colorable argument to justify their circular in factual terms.[1] The focal issue—whether or

1. Although defendants claim that the words "income" and "deduction" are terms of art whose meaning derives from income

tax laws, their only supporting authority are references to the analogy in HUD manuals. Even there, the analogy is be-

not Congress intended to make the grant of statutory deductions subject to HUD discretion—is one of statutory construction. It rests on definition and the legislative history rather than on agency knowledge or expertise and is unequivocally a judicial function. Defendants also challenge plaintiffs' capacity to represent a class which allegedly does not include them, citing Long v. D. C., 152 App.D.C. 187, 469 F.2d 927 (1972).[2] However, unlike *Long,* these plaintiffs and the rest of the class are forced to pay in rent money needed for life necessities, a continuing injury which makes their cause an actual case or controversy. It is unnecessary for the National Tenants Organization to single out affected members when it is obvious that many of its members are affected by the circular as is at least one named plaintiff, Durand. These plaintiffs are clearly representative of the class of public housing tenant households whose members include secondary wage earners and/or dependent spouses. Having found the requirements of Rule 23 F.R.Civ.P. met,[3] the Court certifies this cause as a class action.

▮ Defendants also maintain that plaintiffs lack standing. This argument is without merit. As public housing tenants, the class members are primary beneficiaries of the public housing program. Defendants' circular directly injures their interest in taking allowable deductions, an interest squarely within the statutory protection of "decent, safe and sanitary housing within the financial reach of public housing tenants." 42 U.S.C. § 1402(1). Plaintiffs have,

therefore, met the Supreme Court's twofold test of an actual injury to an interest arguably within the zone of interests protected by the statute. Ass'n of Data Processing Service Organizations, Inc., v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). As to the National Tenants Organization, it is now beyond question that an organization has standing to assert the rights of its members, N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Sierra Club, supra.* It is likewise uncontestable that plaintiffs are aggrieved by agency action and are entitled to judicial review pursuant to the Administrative Procedure Act. Pub.L. 89–554, 80 Stat. 392 (Sept. 6, 1966), 5 U.S.C. § 702.

Moving on to the merits, the Court's primary task is to interpret Section 2(1) of the USHA as it pertains to the nature of deductions and to the discretionary power of HUD to alter deductions. That interpretation will also determine the validity of the HUD circular.

Section 2(1) USHA as amended in 1970 provides:

*"In defining income for purposes of applying the one-fourth of family income limitation set forth above, the Secretary shall consider income from all sources of each member of the family residing in the household who is at least eighteen years of age; except that (A) nonrecurring income, as determined by the Secretary, and the income of full-time students shall*

tween taxation of income and the notion of taxing income for rent: but there is no explanation of the above terms. In any case, income tax law provides exclusions for spouses and dependents in other sections; thus, in the context of income tax law, the above words have a very different meaning from that urged by defendants here. Similarly unmeritorious are defendants' claims that public housing income is derived from rents (see *infra*).

2. The theory is that no members of NTO are named and only one of the named

plaintiffs actually has either a spouse or secondary wage earner in his household.

3. Class members are so numerous that joinder is impracticable; there are questions of law or fact in common; the claims of the named plaintiffs are typical of the claims of the class and the named plaintiffs will fairly and adequately protect the interest of the class. Finally defendants have refused to act on grounds generally applicable to the class as a whole. Rule 23(a), (b)(2), Federal Rules of Civil Procedure, 28 U.S.C. Rule 23.

be *excluded;* (B) *an amount equal* to the sum of (i) *$300 for each dependent,* (ii) *$300 for each secondary wage earner,* (iii) 5 per centum of the family's gross income (10 per centum in the case of elderly families), and (iv) those medical expenses of the family properly considered extraordinary *shall be deducted;* and (C) the Secretary may allow further deductions in recognition of unusual circumstances." (emphasis added)

On March 16, 1971, HUD issued Circular RHM 7465.10 requiring local housing authorities (hereinafter LHA) to restrict allowable deductions to:

"(v) An exemption of $300 for each dependent, i. e., each minor (other than the head or spouse) and for each adult (other than the head or spouse) dependent upon the family for support;

(vi) An exemption of $300 for each secondary wage earned. (A family member deemed to be a dependent under "v" above is not to be included).

This conflict is explained by the defendants who maintain that under *McKinney, supra,* LHA's have the sole authority to define "family income" for the purposes of rent. Further, they claim that because of limited federal subsidies, HUD must disallow deductions whenever the effect would be to substantially increase federal subsidy amounts. Plaintiffs' position is that the 1970 amendment specifically intended to curtail HUD's discretion in order to correct the agency's narrow view of deductions. Plaintiffs contend that the HUD circular thwarts the congressional intent

to provide a work incentive by allowing deductions for the expenses of producing secondary income, and to help shoulder the burden of dependents by making adults eligible for dependency deductions. By their circular, plaintiffs' assert, HUD has unlawfully attempted to re-write a federal law.

The balance of this opinion construes Section 2(1) as it relates to the nature of deductions and their relation to the solvency of the public housing program. The legislative history is recited to clarify Congressional intent for the purposes of this case and for its bearing on any other construction that HUD may give this statute in the future.

The language of the 1970 amendment is mandatory. This appears on the face of the statute, i. e., exclusions "shall be deducted" and discretion is limited, "the Secretary may allow further deductions." This is also clear from the point in time that the amendment was passed. It replaced statutory versions making spouses and secondary wage earners ineligible for deductions and delegating the authority to define "income" to HUD through LHA's.[4] It also succeeded a 1970 HUD Circular rendering spouses and heads of households ineligible for deductions. Circular RHM 7465.1. Furthermore, for more than ten years prior to the 1970 amendment, the exclusive authority to set rents was delegated to LHA's, with the approval of the Secretary.[5] Up to 1969, that discretion was limited only by the requirement that factors which affect the rent paying ability of the family and those which affect the economic stability of the project be considered. Even after the so-called Brooke

---

4. S. 3248, 92nd Cong. 2d. Sess. (1972) did not contain an exemption for secondary wage earners; S. 3248, HR 16704, S. 4368, 92nd Cong. 2d Sess. (1972) all disqualified spouses from dependency deductions. Further, USHA of 1949, 63 Stat. 429, Sec. 306, and USHA 1957, 71 Stat. 301, Sec. 401(a) both contained exclusions whose purpose was to define "income" to aid in establishing the maximum income

to rent ratio (5 to 1) allowable for admission to public housing.

5. USHA of 1959, Sept. 23, 1959, Pub.L. 86–372, Title V, Sec. 502, 503(a), 504, 73 Stat. 680; August 1, 1968. Pub.L. 90–448, Title II, Sec. 206(a), 82 Stat. 504. Limitations on the Public Housing Authority's discretion contained in the 1949 amendment were deleted by the 1959 amendment.

Amendment of 1969, only the 25% income ceiling further limited this discretion and, in all other respects, the Secretary retained the absolute discretion to define "family income" for the purposes of rent limitation. Pub.L. 91–152 Title II, Sec. 213(a), 83 Stat. 389, 395 (1969). It was against the background of this prevailing law that *McKinney, supra,* was decided in this circuit, re-affirming the authority of LHA's to define income for the purpose of the rent ceiling. However, the 1970 amendment changed prior law, and abrogated all restrictions on deductions.

There is substantial evidence in the legislative history that Congress deliberately withdrew HUD's broad discretionary power. Senator Brooks remarked, "In defining income pursuant to the 1960 Act, HUD has taken a very narrow view of possible deductions." prompting the 1970 amendment, which also remedied HUD's exclusion of welfare recipients from deductions.[6] The amendment was designed to eliminate other inequities caused by the Secretary's definition of "income" such as the restrictive definition of "dependents" in the 1970 Circular, and the destruction of incentive for secondary wage earners to work outside the home. The latter was created by disallowing deductions for seondary wage earners, making an increased rent the primary impact of a secondary income. Spouses were ineligible for dependency deductions although their support was ordinarily more costly than that of minors. (For examples, see generally, Housing and Urban Development Legislation of 1970, Senate Hearings Pt. 2 at 1003–1005, 1829; Vol. 179 Senate Reports, 91st Cong. 2d Sess., S. Rept. 91–1216) (1970).

In conclusion, the 1970 amendment is a remedial statute to be construed liberally in order to effect its purposes: To broaden deductions and to make them binding on HUD.

The final issue is the effect of the deductions on the program's solvency. Defendants essentially argue that this is an impossible law, i. e., if literally enforced, the amendment will force the public housing program into financial disaster. But the underlying assumption that public housing income is derived from rents is nowhere supported in the record. In fact, it is directly contradicted by the increase in federal subsidies made annually since 1969 in order to replace "any deficiency arising in a public housing authority's operating revenues as a result of this statutory ceiling."[7] "Thus," according to Senator Brooke, "sufficient funds were provided to make housing authorities 'whole' by eliminating past operating deficits and to insure that, in the future, public housing authorities would have sufficient funds to provide those services, repairs, and training programs which are essential if we are to honor the commitment of a 'decent home and suitable living environment for every American family' ".[8] The 1969 and 1970 amendments created a new subsidy scheme which authorized federal assistance for three purposes: (1) to make up the loss in rental revenues caused by reducing tenants' rent to 25% of income; (2) to eliminate existing operating deficits of LHA's and (3) to assure that LHA's have operating, maintenance, and reserve funds. 116 Cong.Rec. 24297, July 15, 1970. Further, HUD was authorized to use funds up to the annual statutory maximum as specified in the 1937 Act for these purposes if newly au-

---

6. Local welfare agencies were subtracting the amount of federal subsidy from individual welfare checks, prompting HUD to disallow deductions. CF 116 Cong. Rec. 24298 (July 15, 1970)

7. Remarks of Senator Brooke, 116 Cong. Rec. 24298, July 15, 1970. Subsidies were increased in the following legislation: Hud Act of 1969, 83 Stat. 389, Sec. 213 (a) ; House Conference Report 91–740;

increased annual contribution from $150,-000,000 on July 1, 1969, and 1970, to $225,000,000 on July 1, 1969 and $170,-000,000 on July 1, 1970. Pub.L. 91–609 Title II, Sec 202, 203, 204(a)(2), 210. 84 Stat. 1776–1778, Increased to $320,-000,000 on July 1, 1970, and $225,000,000 on July 1, 1971.

8. *Id.* 116 Cong.Record.

thorized funds were insufficient. *Id.* As these facts indicate, Congress was well aware of the financial crisis potentially caused by lowered rents.

It is also apparent that any aggravation of a financial crisis in housing was the result of HUD's repeated attempts to cut back already designated funding, rather than the result of the rent ceiling or deductions. HUD's activities have been aptly described as "Bureaucratic machinations . . . undermin(ing) much of the hope and confidence which these provisions gave tenants and housing authorities." *Id.* 242972. HUD has never requested more than a small portion of these funds. Further, it unilaterally restricted funds to those LHA's with existing operating deficits or with plans to improve services that would require a raised rent unless subsidies were used.[9] Defendants' contentions that enforcement of the deductions would bankrupt the public housing program are transparently unrealistic.

Today's decision concludes yet another stage in this complex and protracted litigation over USHA construction which began in 1970. From the time of the 1969 amendment, plaintiffs' challenges to successive HUD directives "watering down" the Act have been upheld.[10] Hopefully, this decision will remove the last obstacle to a duly authorized, properly passed and amply funded federal program.

Accordingly, the plaintiffs' motion for summary judgment will be granted and the defendants' motion for summary judgment will be denied.

9. Report of the National Housing and Development Law Project on the Brooke Amendment, printed in 116 Cong.Rec. 2430, July 15, 1970.

10. Summary of litigation to date: Plaintiffs brought this action in 1970 to enjoin HUD from *inter alia* withholding federal subsidies from the public housing program and overcharging tenants in violation of rent ceiling set by the 1969 law.

Plaintiffs' motion for injunctive relief was denied. The Court of Appeals vacated the District Court judgment. Subsequently, the Court of Appeals ordered HUD to report the number of LHA's who fixed rents in accord with the statutory ceiling and show cause why the remaining LHA's were non-compliant. In 1971, a supplemental complaint which sets forth the instant claim was filed.