Graydon R. BLOOM and M. Helen Bloom, Individually and on behalf of the tenants of the housing project maintained and operated by the Niagara Falls Housing Authority, Plaintiffs,

v.

The NIAGARA FALLS HOUSING AUTHORITY, Defendant.

Civ. No. 75–81.

United States District Court, W. D. New York.

April 27, 1977.

1184

Paul H. Reid, Jr., Niagara Falls, N.Y., of counsel; Findlay, Hackett, Reid & Wattengel, Niagara Falls, N. Y., for plaintiffs.

Anthony A. Rotella, Niagara Falls, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is a class action certified under Fed. R.Civ.P. rule 23(b)(2) alleging that the Niagara Falls Housing Authority ("the Authority"), a local public agency which owns and operates housing projects in the City of Niagara Falls, New York, has been violating the United States Housing Act of 1937 ("the Act"), as amended, 42 U.S.C. §§ 1401 *et seq.*, by charging its public housing tenants rental fees in excess of the statutory maximum.

Plaintiffs contend that the Authority without any statutory authorization added an arbitrary sum to the incomes of its public housing tenants in computing their family incomes. This so-called "annuity" was a percentage of the tenants' accumulated savings and investments over and above the actual interest incomes derived from such investments. The Authority has admitted that the addition of this percentage for purposes of calculating the family income figure was incorrect and has offered to reimburse its tenants for the excessive rents charged pursuant to the final directions of this Court. Recomputation hereby is ordered.

Plaintiffs next assert that the Authority's refusal to permit a deduction from a tenant's income for a dependent spouse is contrary to the express statutory requirements of the Act which mandates certain deductions in computing family income. Plaintiffs also allege that the Authority's definition of deductible medical expenses conflicts with regulations promulgated by the Department of Housing and Urban Development ("HUD") which define those medical expenses which are required to be deducted from a tenant's income and that the Authority's disallowance of medical insurance premiums as a deductible medical expense was erroneous. Plaintiffs further contend that HUD did not approve the April 1, 1973 rent modifications prior to their implementation by the Authority and that HUD's purported retroactive approval of such rent increases March 28, 1975, almost two years later, did not comport with the requirements of the Act. In addition, plaintiffs allege that the Authority did not comply with certain lease terms and notify its tenants 30 days prior to the rent increases that the rent schedule was being revised to eliminate rent ceilings. This matter is now before me on plaintiffs' motion for summary judgment pursuant to Fed.R. Civ.P. rule 56.

A motion for summary judgment should be granted only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Poller v. Columbia Broadcasting,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Gladstone v. Fireman's Fund Insurance Co.,* 536 F.2d 1403 (2d Cir. 1976); *Egelston v. State University College at Geneseo,* 535 F.2d 752 (2d Cir. 1976); *National Life Ins. Co. v. Solomon,* 529 F.2d 59 (2d Cir. 1975). Where issues before the court are not factual but deal solely with questions of law, those legal issues may be appropriately resolved by summary judgment. *Schwartz v. Associated Musicians of Greater N.Y., Local 802,* 340 F.2d 228 (2d Cir. 1964). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Judge v. City of Buffalo,* 524 F.2d 1321 (2d Cir. 1975); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975).

Plaintiffs' contentions must be placed in a statutory context in order to resolve those questions of law which can be ruled upon on the instant motion.

Prior to 1969, the Act did not place an absolute ceiling on the amount of rent which could be charged, but merely required that

" * * * rents shall be fixed by the public housing agency and approved by the Authority after taking into consideration (A) the family size, composition, age, physical handicaps, and other factors which might affect the rent-paying ability of the family, and (B) the economic factors which affect the financial stability and solvency of the project."

A considerable amount of discretion to set an appropriate rent schedule was thus vested in the local public agency which owned and operated the particular housing project in question.

The Housing and Urban Development Act of 1969, P.L. 91–152, 83 Stat. 379, U.S. Code Cong. & Adm.News at 401, 91st Cong., 1st Sess. (1969), commonly known as the Brooke Amendment, fettered this discretion by placing an absolute ceiling on the amount of rent that could be charged for each dwelling unit by the local agency and by giving the Secretary of HUD the exclusive power to define a "family's income", on the basis of which the maximum allowable rent was to be pegged. It provided that such rents "may not exceed one-fourth of the family's income as defined by the Secretary". Section 213(a), Housing and Urban Development Act of 1969, U.S.Code Cong. & Adm.News at 413, 91st Cong. 1st Sess. (1969). (This provision, in a revised form, now is codified in 42 U.S.C. § 1437a(1).)

The Brooke Amendment, however, failed to say what deductions were to be taken note of and given effect to arrive at the family income figure. Pursuant to the statutory authority to define family income granted to it by such amendment, HUD established two deductions. In Circular RHM 7465.1, issued March 16, 1970, HUD defined family income as

" * * * income from all sources of each member of the family in the household, including minors, anticipated to be received during the twelve months following admission or redetermination of family income (as the case may be) less: (1) a deduction of 10 percent of family income; and (2) an exemption of $100 from family income for each minor (other than the head or spouse) and for each adult (other than the head or spouse) dependent upon family for support."

Thus, as of March 16, 1970, deductions were not permitted for dependent spouses under HUD's definition of family income.

Subsequent to HUD's 1970 Circular, Congress decided to override such definition of family income and again amended the Act by setting forth specific deductions which were to be excluded from total family income to arrive at the family income figure. Section 2(1) of the Act, as amended December 31, 1970 by Section 208(a) of the Housing and Urban Development Act of 1970, P.L. 91–609, 84 Stat. 1770, U.S.Code Cong. & Adm.News at 2079–80, 91st Cong., 2d Sess. (1970), provided:

"In defining income for the purposes of applying the one-fourth family income limitation set forth above, the Secretary shall consider income from all sources of each member of the family residing in

the household who is at least eighteen years of age; except that (A) nonrecurring income, as determined by the Secretary, and the income of full-time students shall be excluded; (B) an amount equal to the sum of (i) $300 for each dependent, (ii) $300 for each secondary wage earner, (iii) 5 per centum of the family's gross income (10 per centum in the case of elderly families), and (iv) those medical expenses of the family properly considered extraordinary shall be deducted; and (C) the Secretary may allow further deductions in recognition of unusual circumstances."

In this 1970 legislation which superseded HUD's determination that a dependency deduction was not permitted for spouses, Congress expressly provided for a deduction "for each dependent" residing in the household without excluding from such $300 deduction any class of persons who were in fact dependents residing in the household. To implement this legislation, however, HUD issued Circular HM 7465.10 on March 16, 1971 and attempted to restrict the deductions pertaining to dependents and secondary wage earners which could be used by local housing agencies in calculating family income to:

"(v) An exemption of $300 for each dependent i. e., each minor (other than the head or spouse) and for each adult (other than the head or spouse) dependent upon the family for support; (vi) An exemption of $300 for each secondary wage earner. (A family member deemed to be a dependent under 'v' above is not to be included)."

Thus, HUD sought to exclude spouses from the definition of dependents and secondary wage earners and to render such family members ineligible for the $300 deductions prescribed by Congress notwithstanding that Congress had supplanted HUD's previous limitations with respect to dependents and secondary wage earners by choosing not to restrict the $300 deductions for dependents and secondary wage earners in Section 208(a) of the Housing and Urban Development Act of 1970.

The Act was subsequently amended when Congress passed the Housing and Community Development Act of 1974, P.L. 93–383, 88 Stat. 654, U.S.Code Cong. & Adm.News at 713, 93rd Cong., 2d Sess. (1974). Section 3(1) of this legislation, U.S.Code Cong. & Adm.News at 738, 93rd Cong., 2d Sess. (1974), redefined family income with respect to mandated deductions for dependents and secondary wage earners as follows:

"In defining the income of any family for the purpose of this chapter, the Secretary shall consider income from all sources of each member of the family residing in the household, except that there shall be excluded—

(A) the income of any family member (other than the head of the household or his spouse) who is under eighteen years of age or is a full-time student;

(B) the first $300 of the income of a secondary wage earner who is the spouse of the head of the household;

(C) an amount equal to $300 for each member of the family residing in the household (other than the head of the household or his spouse) who is under eighteen years of age or who is eighteen years of age or older and is disabled or handicapped or a full time student; * * *." 42 U.S.C. § 1437a(1).

After the passage of this legislation, HUD promulgated new implementation regulations. These regulations track closely the above statutory language. They provide in pertinent part:

"(f) *Family income.* Family income means total family income less the following:

* * * * * *

(5) An exemption of the first $300 of the income of a secondary wage earner who is the spouse of the head of the household.

(6) An exemption of $300 for each member of the family residing in the household (other than the head or spouse) who is under eighteen years of

age or older and disabled, handicapped or a full-time student * * *." 24 C.F.R. 860.403(f)(5) & (6).

[4] Section 3(1) of the Housing and Community Development Act of 1974, which redefined family income, and the implementing regulations promulgated thereunder by HUD make clear that, subsequent to the effective date of such legislation, a spouse is not considered to be a dependent for purposes of calculating family income. The effective date of Section 3(1) of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437a(1), was September 26, 1975. *See,* 24 C.F.R. 860.409. The statute and the regulations now unambiguously exclude a spouse from the $300 deduction for family dependents and only require a deduction for a spouse who is a secondary wage earner. However, the state of the law prior to the effective date of the 1974 legislation must be ascertained to resolve the legal issue before me.

In a case decided prior to the passage of the Housing and Community Development Act of 1974 and presently on appeal to the United States Court of Appeals for the District of Columbia Circuit, *National Ten. Or., Inc. v. Department of H. & Urban Dev.,* 358 F.Supp. 312 (D.D.C.1973), the court held that the dependency deduction as set forth in the Housing and Urban Development Act of 1970 included spouses and that HUD did not have the discretionary authority to issue its 1971 Circular, HM 7465.10, excluding spouses from being eligible for the $300 dependency deduction. The court found that the 1970 legislation replaced earlier statutory versions which had made spouses and secondary wage earners ineligible for deductions and succeeded HUD Circular RHM 7465.1, issued March 17, 1970, which also had rendered spouses ineligible for deductions. The court stated that the legislative history revealed " * * * that Congress deliberately withdrew HUD's broad discretionary power. * * * The amendment was designed to eliminate other inequities caused by the Secretary's definition of 'income' such as the restrictive definition

of 'dependents' in the 1970 Circular, and the destruction of incentive for secondary wage earners to work outside the home." *Id.,* at 316.

The court then concluded that the purpose of the 1970 legislation was "[t]o broaden deductions and to make them binding on HUD." *Ibid.*

As stated previously, the decision in *National, supra,* was made prior to the enactment of the Housing and Community Development Act of 1974. After the initial decision was issued that case was appealed to the United States Court of Appeals for the District of Columbia Circuit. The appellate court remanded the case to the district court for reconsideration in light of the 1974 legislation. On remand, the Honorable John Lewis Smith, Jr. of the district court apparently decided the subsequent legislation did not alter his initial determination and issued an order July 12, 1976 directing entry of final judgment. The case is again on appeal and no decision has yet been rendered.

■ I have reviewed the 1974 legislation and its legislative history and conclude that, prior to its effective date (September 26, 1975), the $300 deduction for dependents mandated by the Housing and Urban Development Act of 1970 then included spouses and that HUD's 1971 Circular, HM 7465.-10, was contrary to the will of Congress and therefore void insofar as it purported to make spouses ineligible for the dependency deduction.

The Senate Report and the Conference Report accompanying the new 1974 legislation on its path through Congress shed light on whether a spouse was required by Congress to be included as a dependent for purposes of arriving at the family income figure prior to September 26, 1975. In describing how the new legislation would affect the then current law, the Senate Report stated:

" * * * Income limits and rents would continue as under existing law to be fixed by the public housing agency pursuant to State law, except when otherwise provided. The rent fixed by a public housing

agency could not exceed one-fourth of a low-income family's income, as under existing law, and income would be defined based on certain statutory deductions listed in Section 3 of the Act. *The Committee has modified the definition of income contained in existing law so as to correct a technical problem which has resulted in a requirement for a double deduction in case of spouses who are secondary earners.*" S.Rep.No.93–693, U.S.Code Cong. & Adm.News at 4310, 93rd Cong. 2d Sess. (1974). (Emphasis supplied.)

The Conference Report described the changes being made by the Senate Bill, which was passed by Congress and enacted into law, as follows:

"* * * The Senate bill revised the definition of income in the 1937 Act by eliminating certain double deductions; clarifying deductions for dependents; *eliminating deductions for heads of households or their spouses*; and adding a deduction for foster child care payments. * * * The conference report contains the Senate provisions." Conf. Rep. No. 93–1279, U.S.Code Cong. & Adm.News at 4461, 93rd Cong., 2d Sess. (1974). (Emphasis supplied.)

These statements buttress the findings and conclusion of Judge Smith in *National Ten. Or., Inc. v. Department of H. & Urban Dev., supra,* that a public housing tenant was entitled to a $300 deduction for his or her dependent spouse under the Housing and Urban Development Act of 1970.

In the instant motion, plaintiffs seek a recomputation of rents from January 1, 1970. Section 208(b) of the Housing and Urban Development Act of 1970 stated that:

"The income definition contained in the last sentence of the second paragraph of section 2(1) of the Housing Act of 1937, as added by subsection (a) of this section, shall be effective at the first annual reexamination of the tenant's income subsequent to March 24, 1971." U.S.Code Cong. & Adm.News at 2080, 91st Cong. 2d Sess. (1970).

Therefore, plaintiffs' request for a recomputation back to January 1, 1970 cannot be granted.

I hold that, between the first annual reexamination of a tenant's income after March 24, 1971 and the effective date of the 1974 legislation (September 26, 1975), the mandated $300 deduction for dependents contained in Section 208(a) of the Housing and Urban Development Act of 1970 included dependent spouses residing in the household. Recomputation for such time span hereby is granted.

With respect to the issue of what medical expenses are to be included in the computation of family income, Section 208(a) of the 1970 Act provided that:

"In defining income for purposes of applying the one-fourth of family income limitation set forth above, the Secretary shall consider income from all sources of each member of the family residing in the household * * *; except that * * * those medical expenses of the family properly considered extraordinary shall be deducted; * * *." U.S.Code Cong. & Adm.News at 2079, 91st Cong., 2d Sess. (1970).

In order to implement this legislation, HUD issued Circular HM 7465.10 on March 16, 1971 in which the mandated deductible medical expenses were defined as follows:

"A deduction for extraordinary medical expenses where not compensated for or covered by insurance, defined for this purpose to mean medical expenses in excess of three percent of Total Family Income; * * *".

The Housing and Community Development Act of 1974 altered slightly the statutory language pertaining to the required deduction for medical expenses. Such legislation stated:

"In defining the income of any family for the purpose of this chapter, the Secretary shall consider income from all sources of each member of the family residing in the household, except that there shall be excluded— * * * (f) such extraordinary medical or other expenses as the

Secretary approves for exclusion; * *." 42 U.S.C. § 1437a(1)(F).

Thereafter, pursuant to its statutory authority to define and approve excludible medical expenses, HUD on September 26, 1975 promulgated regulations which again utilized the three percent standard contained in its 1971 Circular.

"* * * Family income means total family income less the following:

* * * * * *

(2) A deduction for extraordinary medical expenses, defined for this purpose to mean medical expenses in excess of three percent of total family income, where not compensated for or covered by insurance." 24 C.F.R. 860.-403(f)(2).

Prior to the passage of the Brooke Amendment in 1969, the Authority had permitted a deduction for certain medical expenses based upon its own criteria. The standard employed by the Authority was significantly different from that later adopted by Congress and HUD and is set forth in Section XI of the Authority's Statement of Policies, titled "Net Family Income". Therein it is stated:

"1. Any of the following deductions, but no other, may be made by the Local Authority at it's [sic] discretion, however, it must in any event apply the deductions so determined uniformally [sic] to all applicants or tenants of projects under it's [sic] jurisdiction. * * * E. Predictable medical expenses for continuing illness, if determined by the Local Authority to be proper and reasonable by documentation, by the attending doctor, and/or previous year's receipts on the predictable illness. Noterized [sic] statements for all or part of the requested exemption is [sic] not acceptable in excess of 3 per cent of the aggregate income of the family and where not specifically compensated for or covered by insurance."

Under the Authority's policy statement only predictable medical expenses incurred due to a continuing illness are deductible regardless of whether such expenses exceed three percent of the aggregate family income. The Authority continued to apply this standard rather than the criterion later adopted by Congress and HUD.

■ The language of the Act, as amended by Section 208(a) of the Housing and Urban Development Act of 1970, mandated a deduction for "extraordinary medical expenses" and vested the Secretary of HUD, not the local housing authority, with the power to define what medical expenses were to be considered extraordinary and hence deductible. In HUD Circular HM 7465.10, issued March 16, 1971, the Secretary adopted a standard comparable to that employed by Section 213 of the Internal Revenue Code, 26 U.S.C. § 213, which permits individual taxpayers to deduct those medical expenses which exceed three percent of adjusted gross income. The Secretary did not place any limitations or restrictions on what types of medical expenses could be properly included in the total amount of deductible medical expenses incurred by a public housing tenant. The Authority has not pointed to any specific language in the Act, in the pertinent amendments thereto, in the relevant legislative histories, or in HUD's regulations or circulars which would even tenably delegate to it the power to restrict includible medical expenses to those which are predictable and are incurred because of a continuing illness. Such a standard, which was applied by the Authority pursuant to its policy statement, directly contravenes the mandatory language of the Act and the explicit definition of extraordinary medical expenses adopted by HUD. The standard employed by the Authority—predictable medical expenses for continuing illness—must yield insofar as it conflicts with the broad definition of extraordinary medical expenses adopted by HUD—namely, uncompensated medical expenses in excess of three percent of total family income.

■ The Authority's attempt to premise its power to restrict eligible medical expenses on the general declaration of policy set forth in 42 U.S.C. § 1437, on an internal HUD memorandum, and on an unsigned letter from Frank D. Cerabone, HUD's

Area Director, is unavailing. The referenced section expresses the stated policy—to wit,

"to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs."

However, this policy to maximize delegated authority at the local level is, by the same section, appropriate only where "consistent with the objectives of this chapter." The restrictive definition of extraordinary medical expenses adopted by the Authority does not further the Act's objectives of placing a ceiling on public housing rental fees pegged to a standardized amount, termed "family income", which includes in its computation certain mandatory deductions such as those medical expenses determined by the Secretary to be extraordinary or otherwise deductible. If each local agency could independently determine what medical expenses were extraordinary, then rental fees in various public housing projects would differ for tenants who otherwise would have the same family income. Congress in Section 208(a) of the Housing and Urban Development Act of 1970 withheld from the local public agencies operating the housing projects the authority to determine what medical expenses are deductible and placed this power in the hands of HUD's Secretary. The contention urged here by the Authority—that local public agencies can regulate what medical expenses are extraordinary and hence deductible—would not be consistent with the objectives of the Act and would undercut the exclusive power to define and approve deductible medical expenses granted to the Secretary.

The internal HUD memorandum dated April 2, 1975 cited by the Authority to support its position stated:

" * * * With regard to your question on deductions for extraordinary medical expenses where not compensated for or covered by insurance, the definition of those expenses is subject to individual local authority policy, pursuant to the local autonomy provision contained in Section 201(a)(2) of the United States Housing Act of 1937, as amended. 'It is permissible under the statutory definition of income to include medical insurance premiums as a deduction. We remind you that those medical costs that are paid for by the individual and subsequently reimbursed, either through private insurance or medicare are not permissible as a deduction * * *.'"

The letter said to support the Authority's position contained the following pertinent statement:

" * * * In regards to an allowance for medical expenses, the Authority should make the determination for extraordinary expenses. We suggest you follow the guidelines set forth in Paragraph E, Part I of Section XI of your Occupancy Policy. This policy statement addresses itself only to predictable illnesses of a continuing nature, and does not appear to make a provision for the inclusion of Health Insurance Payments * * *.'"

■ The opinions set forth in such memorandum and letter pertaining to the local agency's authority to define extraordinary medical expenses are, with all due respect, erroneous. The Act's general declaration of policy does not supersede the specific delegation to the Secretary of the responsibility for defining extraordinary medical expenses. Cf., *Housing Auth. of City of Omaha, Neb. v. United States H. A.,* 468 F.2d 1 (8th Cir. 1972). Moreover, the Secretary, in HUD Circular 7465.10 issued March 16, 1971, defined extraordinary medical expenses to mean those in excess of three percent of total family income which are not compensated by insurance. This definition was later adopted and promulgated as a regulation by HUD, 24 C.F.R. 860.-403(f)(2). No restrictions other than the three percent floor were placed on what medical expenses could be included in the deductible amount. Moreover, the Authority points to no empowerment by which it was legally enabled to define extraordinary medical expenses but merely asserts a blanket conclusion in its memorandum of law that " * * * [i]n order to accomplish these rules and regulations governing de-

ductions of medical expenses, the Department of Housing and Urban Development has delegated these same powers to the local Housing Authority * * *." The opinions expressed in the informal correspondence relied upon by the Authority do not comport with the official definition adoption by HUD in its 1971 Circular and later incorporated into its definitional regulation and therefore are without merit.

I conclude that the Authority did not have power to define extraordinary medical expenses and that insofar as its policy statement pertaining to deductible medical expenses conflicts with the definition adopted by HUD it is null and void. In computing family income, the Authority was required subsequent to the first annual reexamination of a tenant's income after March 24, 1971 to deduct all medical expenses in excess of three percent of total family income where not compensated for or covered by insurance. Recomputation hereby is ordered.

Plaintiffs further contend that the Authority's disallowance of health insurance premiums as a deductible medical expense was improper. The parties to this action have not pointed to any statutory provision, regulation, or HUD circular which specifically addresses this issue. I have been unable to find in my research on this issue any explicit language in the Act, as amended, in the pertinent legislative history, or in HUD's regulations or circulars which is controlling. A determination on this issue must, therefore, be reached by reviewing how HUD proceeded to define "extraordinary medical expenses" and by giving to the words in that definition their common and ordinary meaning.

Pursuant to its authority to define those medical expenses which were to be deducted from total family income, HUD defined such expenses broadly "to mean medical expenses in excess of three percent of total income, where not compensated for. or covered by insurance." HUD Circular HM 7465.10, Section 2(b)(2), March 16, 1971; 24 C.F.R. 860.403(f)(2). This definition of "extraordinary medical expenses" adopted by HUD placed only two exclusions on what medical expenses were deductible: (1) annual medical expenses which did not exceed three percent of total family income and (2) medical expenses which were reimbursed or paid for by insurance. Except for these restrictions, HUD chose not to proscribe the deduction of any other legitimate medical expenses from a public housing tenant's total family income to calculate family income. It is significant that HUD did not limit or restrict what could be considered a deductible medical "expense".

It is undeniable, and the Authority does not contend otherwise, that health insurance premiums involve an expenditure of funds and therefore are appropriately termed an "expense". The purpose of such expenditures is to afford the insured the financial ability to pay the high cost of needed medical care by spreading the risk among a large class of individuals. In effect, the payment of health insurance premiums prevents the foreclosure of proper medical attention because of an individual's inability to pay for those services. As such, health insurance premiums are properly delineated a "medical expense" and should be aggregated in a public tenant's medical expense deduction. The Act, as amended, and HUD's regulation and circulars do not speak to the contrary. Moreover, I fail to perceive any justification based upon logic or reason for excluding health insurance premiums from the term "medical expenses" as used in the Act and regulations. Excluding from medical expenses deduction those expenses paid by insurance almost by itself requires the allowance of a deduction of the cost of such insurance. Therefore, I hold that health and medical insurance premiums, including "Medicare", are medical expenses within the meaning of the Act, as amended, and the regulations adopted by HUD and that such premiums should have been deducted to calculate family income subsequent to the first annual reexamination of a tenant's income after March 24, 1971. Recomputation hereby is ordered.

With respect to the plaintiffs' remaining contentions, there are material fac-

tual issues which preclude summary judgment. Plaintiffs assert that HUD did not approve the April 1, 1973 rent modifications before the Authority put them into effect and that HUD's retroactive letter of approval was insufficient under 42 U.S.C. § 1402. The Authority submits that HUD's approval was obtained on February 28, 1973. In addition, plaintiffs allege that the Authority did not notify its tenants 30 days prior to the rent increases as required by their leases. The Authority maintains that each and every tenant was served with notice either personally or by mail on February 22, 1973. Plaintiffs concede in their reply memorandum that Graydon Bloom, a named plaintiff, received a notice of rent modification, but contend that such notice did not advise him that the rent schedule had been revised to eliminate rent ceilings. These contentions can only be resolved after the factual issues raised are developed at trial.

On the motion of any party this case will be placed on an early calendar for the purpose of setting a trial date.

It is therefore hereby

ORDERED that plaintiffs' motion for summary judgment is partially granted in accordance with the opinion herein.