**Latanya HOLLY**

v.

**HOUSING AUTHORITY OF NEW ORLEANS.**

**Civ. A. No. 87–5593.**

United States District Court,
E.D. Louisiana.

May 4, 1988.

---

New Orleans Legal Assistance Corp., Stephen H. Burrington, New Orleans, La., for plaintiff.

Debra Hucks McCathern, New Orleans, La., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

In May of 1984, the plaintiff, LaTanya Holly, rented an apartment at 512 Austerlitz Street in New Orleans. The owner of the rental property, Clarence Bell, entered into a one-year lease with Holly and, also, a housing assistance payments contract with the Housing Authority of New Orleans ("HANO"). The assistance contract was authorized under Section 8 of the United States Housing Act, which provides for direct subvention payments to private lessors on behalf of qualified low-income lessees.[1] 42 U.S.C. § 1437f. The Department of Housing and Urban Development ("HUD") administers and provides funding for this rent assistance program through annual contribution contracts with HANO. At the end of the first lease period, both Holly and Bell wanted to extend the lease, and, accordingly, Bell signed another assistance contract with HANO on June 10, 1985.

HUD regulations provide that HANO and other participating local housing authorities must undertake annual investigations to determine the family composition and income of participants in the program. 24 C.F.R. § 882.212(a) (1987).[2] Thus, on May 17, 1985, HANO conducted a recertification interview with Holly. At that interview, Holly supplied information for HANO to complete a "Certification/Recertification of Tenant Eligibility." That form called for information regarding Holly's

---

**1.** Section 8 provides, in part:

(a) For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section.

(b)(1) The Secretary [of the United States Department of Housing and Urban Development] is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section....

42 U.S.C. § 1437f(a)–(b)(1) (1982 & 1987 Supp.)

**2.** 24 C.F.R. § 882.212(a) provides:

(a) *Regular reexaminations.* The PHA [HANO] must reexamine the income and composition of all Families at least once every 12 months. After consultation with the Family and upon verification of the information, the PHA [HANO] shall make appropriate adjustments in the Total Tenant Payment....

24 C.F.R. § 882.212(a) (1987).

household composition.[3] Holly listed herself and her daughter, Trenise, as comprising the household.

However, on February 13, 1985, prior to filling out the "Certification/Recertification" form, Holly had married Howard Lodge. According to Holly, Lodge was arrested two days after their marriage. After spending several days in prison, Lodge visited Holly's home sporadically, and on March 1, 1985, Holly told Lodge to leave her home permanently; shortly thereafter, they were divorced. Holly claims that she never received any income from Lodge. HANO offers nothing beyond argument and speculation to dispute that claim.

At a November 29, 1986 recertification interview, a HANO employee informed Holly for the first time that the agency required notice of any change in her marital status, and that she had not provided that information. In response, on December 4, 1986, Holly provided HANO with an affidavit, which stated: "I am living separate and apart from my husband, Howard Lodge. We separated in March, 1985. I do not know his present address." Nonetheless, on December 6, HANO sent Holly a "Notice of Ineligibility," informing her that she was no longer eligible for housing assistance because of her failure to report her household composition accurately by not mentioning her marriage to Lodge. HANO informed her that the agency's assistance contract with Clarence Bell, Holly's landlord, was "null and void." Holly appealed the administrative decision and, after another hearing, HANO affirmed its decision on June 25, 1987.

Holly asserts jurisdiction under the provisions of 28 U.S.C. § 1331 and 1343(a)(3)–(4). She initiated this action only after appealing HANO's decision to discontinue her housing assistance payments. Accordingly, on the facts before this Court, Holly has exhausted her administrative remedies and her claims are properly before the Court. HANO does not contest jurisdiction.

Holly bases her action on HANO's alleged violation of the Civil Rights Act, 42 U.S.C. § 1983, by improperly denying her continued Section 8 payments. She asks for a judgment declaring HANO's termination of housing assistance payments to be improper, an injunction compelling HANO to resume its housing assistance payments, compensatory damages, and attorney's fees, pursuant to 42 U.S.C. § 1988.[4]

Holly asserts four separate grounds for recovery. First, she contends that HANO violated her rights under Section 8 of the United States Housing Act, 42 U.S.C. § 1437f and its implementing regulations. Second, she asserts that HANO's actions constitute a violation of the Due Process Clause of the Fourteenth Amendment. Third, Holly claims that HANO has breached its obligations to her in her capacity as a third-party beneficiary of the annual contributions contract between HANO and HUD. Finally, Holly contends that HANO has breached its obligations to her as a third-party beneficiary of the housing payments assistance contract between HANO and Clarence Bell, Jr., her landlord.

She now moves for summary judgment. Because this Court agrees with Holly's first claim, and because her claims do not appear to differ in the relief available, it is not necessary to address her other three contentions.[5] A partial summary judgment should be granted in her favor.

3. The HANO form referred to "household members". The HUD regulations, on the hand, refers to "family composition". Neither party makes an issue of this distinction in terms. The Court assumes, therefore, that the difference in terms used does not constitute a substantive distinction bearing upon Holly's obligations of disclosure. "Family composition" is not defined in the regulations.

4. 42 U.S.C. § 1988 provides, in part:

In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.
42 U.S.C. § 1988 (1982).

5. The Court notes, however, that other courts have split over the issue of whether participating tenants, like Holly, can obtain relief as third-party beneficiaries to annual contributions contracts. *See Samuels v. District of Columbia,*

*Holly's Claim Under Section 8*

 The Court's initial inquiry is whether or not HANO has violated the provisions of Section 8 and its implementing regulations. Under the analysis set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975), the intended beneficiaries of a federal act may, in some circumstances, maintain private actions to redress violations of statute-created private rights. The Fifth Circuit interpreted the *Cort* test in *Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 758 (5th Cir.1987):

(1) Is the plaintiff one of the class for whose special benefit the statute was enacted?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy?

(4) Is the cause of action one traditionally related to state law, in an area basically the concern of the States, so that it will be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 758 (citing *Cort, supra,* 422 U.S. at 78, 95 S.Ct. at 2088). The focus of the test

is on congressional intent. *Hill v. Group Three Housing Development Corp.,* 799 F.2d 385, 394 (8th Cir.1986). Two Circuits have held, under the *Cort* analysis, that Congress did not imply a private right of action under Section 8. *Price v. Pierce,* 823 F.2d 1114, 1122 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988); *Hill, supra,* 799 F.2d at 394–95 (quoting *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 821 (4th Cir.1984)).[6] But these decisions no longer suggest the answer to this question. They stop short of the answer.

Recently, in *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Supreme Court held that the Civil Rights Act, 42 U.S.C. § 1983 (1982),[7] does provide housing assistance participants with a private right of action to redress violations of federal housing laws by state officials.[8] The Court reasoned that Section 1983 applies to violations of the housing statute because the statute did create enforceable rights within the meaning of Section 1983, and Congress had not foreclosed the enforcement of those rights by way of the Section 1983 mechanism.[9] 107 S.Ct. at

---

770 F.2d 184, 201 n. 14 (D.C.Cir.1985), and the cases cited therein. The *Samuels* court, after holding that Section 1983 provides tenants with a cause of action to redress violations of the Housing Act, also declined to go further and address the availability of third-party contractual relief.

**6.** While the Eighth Circuit, in *Hill,* cited *Phelps* for the proposition that Section 8 does not provide an implied right of action, that does not appear to be the holding in *Phelps.* In *Phelps,* the Fourth Circuit held that Section 1983 could not be used to enforce statutory rights under Section 8. The *Phelps* holding is clearly at odds with recent Supreme Court case law discussed *infra.*

**7.** Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

42 U.S.C. § 1983 (1982).

**8.** The Court notes that the provisions upon which Holly bases her claim and upon which HANO based its determination of her payments are contained in HUD's federal regulations. HANO, however, does not contend that the fact that this litigation concerns primarily regulatory provisions, and not the statute itself, demands any alteration of the Court's analysis.

In fact, *Wright* involved a claim that a local public housing agency had violated both the Brooke Amendment to the Housing Act and its implementing regulations. In entertaining the petitioner's regulatory claims, the *Wright* Court cited *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), in which the Supreme Court stated:

It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law."

*Brown,* 441 U.S. at 295, 99 S.Ct. at 1714 (footnote omitted).

**9.** Arguably, since the Court was dealing with utilities costs as a component of rent, *Wright* could be narrowly construed to cases arising under the Brooke Amendment to Section 3 of

770. So, while Congress did not imply a private right of action in Section 8 itself, Section 1983, said the Court, provides Holly with a mechanism to redress violations of the Act. In this case, the functional result is the same. *See Price, supra*, at 1122. Accordingly, this Court must decide whether HANO, a state agency, has violated the provisions of Section 8 of the Housing Act.[10]

*Did HANO Violate Section 8 And The Regulations?*

■ Looking to the substance of Holly's statutory claims, the Court concludes that HANO did improperly terminate Holly's benefits in violation of Section 8 and its implementing regulations. Under the regulations, an implementing state agency, like HANO, may refuse to enter into a contract with a participant under the following circumstances:

> (3) If the applicant or participant has committed any fraud in connection with any federal housing assistance program[; or]

the Housing Act, 42 U.S.C. § 1437a (1982). Such a distinction between *Wright* and the present case is not supported by the broad language of the Supreme Court's opinion. The *Wright* majority stated broadly:

> In sum, we conclude that nothing in the Housing Act or the Brooke Amendment evidences that Congress intended to preclude petitioners' § 1983 claim against respondent. 107 S.Ct. at 774. Moreover, in *Price v. Pierce*, 823 F.2d 1114, 1122 (7th Cir.1987), a Section 8 case in which the court found no statutory violation, the Seventh Circuit nevertheless ignored such a confined interpretation of *Wright*, concluding in dicta that *Wright's* Section 1983 analysis applied to actions against "state housing officials" to redress the deprivation of rights under "federal housing law." The Fifth Circuit has not yet spoken to the issue.

10. This Court notes the apparent novelty of the *Wright* decision. In holding that Section 1983 provides low-income tenants with a cause of action against state agents for the violation of federally-secured rights, the majority relied upon Section 1983 precedent, and inexplicably did not discuss the traditional test, enunciated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining when Congress has provided a private right of action to enforce a statute. Under the *Cort* analysis, the court must undertake a rigid four-part ana'ysis, which focuses on whether Congress has displayed an intent, on the face of the statute or in

> (4) If the applicant or participant has violated any Family obligation under the Section 8 Existing Housing Program as stated in § 882.118.

24 C.F.R. § 882.210(b)(3)–(4) (1987).[11] 24 C.F.R. § 882.118, in turn, provides that, among the Section 8 Family obligations is the duty to:

> (1) Supply such certification, release, information or documentation as [HANO] or HUD determine to be necessary, including ... submissions required for an annual or interim reexamination of Family income and composition.

24 C.F.R. § 882.118(a)(1) (1987).

Under the undisputed facts, Holly has not violated any of the requirements of 24 C.F.R. § 882.210(b)(3)–(4). HANO claims that Holly violated her obligation to inform the agency of changes in her family composition by failing to report her marriage to Howard Lodge. But nothing in Section 8 of the Act or in the regulations supports the notion that Holly had a duty to inform HANO of her short-lived marriage.[12] The

its legislative history, to provide a private right of action. *Wright*, 107 S.Ct. at 775–76 (O'Connor, J., dissenting). No matter how appealing the dissent's analysis seems, the *Wright* decision is binding precedent on this Court in view of the sweep of the language used.

11. Holly points to 24 C.F.R. § 882.210(b)(3)–(4) as the termination provisions applicable in this case. Those subsections refer to HANO's authority to deny the admission of a new applicant to the Section 8 program, to deny the issuance of a certificate to a participant who wishes to change residences, and to decline to enter into a payments contract or approve a lease as requested by a participant. 24 C.F.R. § 882.210(d)(1)–(2), which deal expressly with the termination of payments under an existing contract seem to be more applicable to the facts of this case, but, the two sets of provisions are identical in wording and effect.

12. HANO points to 24 C.F.R. § 813.106 in support of its contention that Lodge should have been listed by Holly as a member of her household. Section 813.106 provides that:

> (a) Annual income is the anticipated total income from all sources received by the Family head *and spouse....*

24 C.F.R. § 813.106(a) (1987) (emphasis added). This provision cannot reasonably be construed as support for HANO's position. This is particularly true in this case, in which Holly was only

certification form filled out by HANO officials when Holly attended the interview gives no indication that Holly was ever asked whether of not she had married or that she was even informed that marriage would have an impact upon her eligibility. Marriage is simply not stated to be a component of the family composition referred to in the regulations. More importantly, if Lodge was ever a member of Holly's household, he certainly was not at the time of Holly's recertification interview, on May 17, 1985. In short, under Section 8 and its implementing regulations, marriage, by itself, does not make a spouse a member of the household, and there is no evidence in this case that Lodge otherwise qualified as a member of Holly's household.

■ Likewise, Holly has not violated the HUD regulations by committing fraud in connection with her participation in the Section 8 program. *See* C.F.R. § 882.210(b)(3). Although the statute does not define the term, the general elements of fraud are:

> (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation.

*Nader v. Allegheny Airlines,* 626 F.2d 1031, 1036 (D.C.Cir.1980). Under the general test for fraud, Holly has not committed any act which could be said to amount to fraud on the facts before the Court. She made no false representation on this record.

Accordingly, the Court holds that under the Supreme Court's decision in *Wright,* Section 1983 provides Holly with a right of action to redress violations of the Housing Act by state officials. The Court finds on the facts before it that HANO wrongfully terminated Holly's benefits in violation of the Section 8 of Housing Act and its implementing regulations, found in 24 C.F.R. § 882.210(b)(3)(4). There are no issues of material fact in dispute.[13] Partial summary judgment is therefore proper.[14]

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment is GRANTED. Issues of compensatory damages and attorney's fees remain.

---

married to Lodge for a brief period of time and his residence in her house was even shorter in duration.

HANO also cites *Bloom v. Niagra Falls Housing Authority,* 430 F.Supp. 1183 (W.D.N.Y.1977), as support for its view that the fact of the Holly–Lodge marriage *ipso facto* made Lodge a member of Holly's household for Section 8 purposes. *Bloom* provides no support for HANO's position. The issue before the *Bloom* court was whether spouses could be considered deductions in establishing family income. That court did not attempt to define household composition or membership for Section 8 purposes.

13. Aside from HANO's failure to show that either Section 8 or HUD regulations required that Holly disclose her marriage, the Court stresses that HANO has also produced no evidence to show that any HANO representative informed Holly personally, prior to her disqualification, that such information was required as part of the household composition equation.

14. Because the Court does not address Holly's constitutional and contractual claims, any relief that issues in this case shall only refer to to the statutory infirmity of HANO's actions.