**Pamela DRAKE and Cheryl Harris, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**Samuel R. PIERCE, Jr., et al., Defendants.**

**No. C87–594R.**

United States District Court, W.D. Washington.

Sept. 12, 1988.

Yvette Hall War Bonnet, Gregory D. Provenzano, Evergreen Legal Services, Everett, Wash., for plaintiffs.

Anastasia Dritshulas, Asst. U.S. Atty., Joyce Moen, U.S. Dept. of Housing & Urban Development, Seattle Office, Region X, Seattle, Wash., R. Michael Kight, Ronald L. Castleberry, Newton, Kight, Novack, Hammer Adams & Castleberry, Everett, Wash.,

Frederick M. Morgan, Jr., U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## ORDER GRANTING PLAINTIFFS' AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on cross motions for summary judgment. Plaintiffs move for summary judgment on their remaining Administrative Procedures Act claim (APA) against defendants the United States Department of Housing and Urban Development ("HUD"), its Secretary, Samuel R. Pierce ("the Secretary"), and Harold E. Saether, an official with HUD's Region X (Seattle) Office (referred to collectively as "the federal defendants"). The federal defendants seek judgment in their favor on a cross motion for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I

### INTRODUCTION

Originally, plaintiffs brought claims under the APA, 5 U.S.C. §§ 701–06, alleging that the federal defendants acted improperly in failing to implement Congressionally mandated housing admission preferences in the Section 8 Existing Housing Certificate Program ("Certificate Program"), 42 U.S.C. § 1437f(d)(1), and the Section 8 Existing Housing Voucher Program ("Voucher Program"), 42 U.S.C. § 1437f(o). On April 14, 1988, the court granted plaintiffs declaratory and injunctive relief against the federal defendants.[1]

On June 1, 1988, the court granted plaintiffs' motion for leave to add an additional APA claim against the federal defendants.

Plaintiffs' additional claim, the subject of the parties' cross motions, challenges HUD's final rule implementing the housing admission preferences.

## II

### FACTUAL BACKGROUND

The parties do not dispute the facts relevant to their cross motions.

As explained in detail in the court's previous Order in this case, Congress established the Section 8 Housing Program in 1974 as part of the Housing and Community Development Act, 42 U.S.C. § 1437f, which amended the United States Housing Act of 1937, 42 U.S.C. § 1437 ("NHA"). Congress sought *inter alia* to subsidize low-income families in the rental of existing housing under the Certificate Program, established in 1974, and the Voucher Program, established in 1983.

Until 1979, Public Housing Agencies ("PHAs"), which administer the Certificate and Voucher Programs, had authority to provide for preferences in selecting applicants, but were not required to do so. 24 C.F.R. §§ 882.2.4(b)(3), 882.209. Many PHAs adopted preferences such as those for veterans and local residents. Federal Defendants' Memo In Support ("Def. Mem.") 6. In 1979, Congress mandated that, in administering the Certificate Program, PHAs give "preference to families that occupy substandard housing or are involuntarily displaced at the time they are seeking assistance." 42 U.S.C. § 1437f(d)(1)(A).[2] In 1983, Congress added a third preference for families paying more than 50 per cent of family income for rent. *Id.*[3] Likewise, in creating the Voucher Program in 1983,[4] Congress required that, in selecting program participants, preference must be given to families that fall within one of the already identified federal

---

1. *Drake v. Pierce,* 691 F.Supp. 264 (1988) (Order Granting Plaintiffs' Motions For Partial Summary Judgment).

2. Housing and Community Development Amendments of 1979, Pub.L. 96–153, Title II, § 206, 93 Stat. 1106, 1108–10 (December 21, 1979).

3. Housing and Urban–Rural Recovery Act of 1983, Pub.L. 98–181, Title II, § 203, 97 Stat. 1178, 1181–83 (November 30, 1983).

4. *Id.*

preference categories. 42 U.S.C. § 1437f(*o*)(3).[5]

On September 26, 1984, the Secretary published a proposed rule to implement the federal preferences in the Certificate Program. 49 Fed.Reg. 37787.[6] HUD's proposed rule sought to give the three federal preferences "primacy over all non-federal preferences." 49 Fed.Reg. at 37,788. HUD took the position that

in the weighing process, an applicant qualifying for any one of these three [federal] preferences would outweigh, and therefore be chosen before, another applicant who does not qualify for one of the three [federal] preferences, regardless of the combination or aggregation of other [non-federal] preferences enjoyed by the other applicant and without regard to which applicant filed first, or the length of time the first applicant was on the waiting list.

49 Fed.Reg. at 37,788–89. Although HUD believed its proposed rule was "fairly responsive" to Congressional intent underlying the federal preferences, 49 Fed.Reg. at 37,788, HUD "specifically request[ed] comment on the effect and propriety of ... accord[ing] [federal preference families] an absolute preemptive right and preeminence over [applicants entitled to non-federal preferences]." *Id.*

During the comment period following the Notice of Proposed Rulemaking, HUD received more than 130 statements from interested parties. *See* Def.Mem., Exhibit ("exh.") 1. Virtually all of the comments criticized the proposed rule's view that the three federal preferences were, as a matter of law, applicable to 100% of available Section 8 housing. According to HUD, the comments also raised concerns that PHAs would be stripped of the flexibility necessary to respond to emergency situations or to serve important local needs. Def.Mem. 6.

In light of these comments, HUD reevaluated its position and published its final rule on January 15, 1988. 53 Fed.Reg. 1122. Based on its reevaluation, HUD concluded that the statutory language and Congressional purpose would permit

PHAs operating Public and Indian Housing programs and Section 8 Certificate and Moderate Rehabilitation programs [to be given] some flexibility to devise tenant selection systems that favor applicants without a Federal preference over Federal preference-holders.

*Id.* at 1126. Consequently, the final rule contains a "ten percent exception," under which

[t]he PHA's system for applying the Federal preferences may provide for circumstances in which applicants who do not qualify for a Federal preference are issued a Certificate of Family Participation before other applicants who are so qualified. Not more than ten percent of the applicants who are initially issued a Certification (sic) of Family Participation in any one-year period.... may be applicants referred to in the preceding sentence.

53 Fed.Reg. at 1153 (to be codified at 24 C.F.R. § 882.219(b)(2)(ii). On March 23, 1988, the Secretary issued a notice requiring PHAs to implement the federal preferences in the Voucher Program at the time they implemented the preferences in the Certificate Program. 53 Fed.Reg. at 9575, 9578.

Under HUD's original timetable, PHAs had until July 13, 1988 to implement the final rule. However, this court's earlier Order directed HUD to notify all Washington State PHAs to implement the preferences by no later than May 15, 1988, using either the "Everett Plan" (which did not include the ten percent exception) or HUD's final rule. On June 2, 1988, plaintiffs' counsel contacted the affected PHAs

---

5. For purposes of clarity, the court refers to the Congressionally mandated preferences as "federal preferences" and all PHA adopted preferences as "non-federal preferences".

6. The Government has supplied copies of the applicable Federal Register pages for both the proposed and final rule. *See* Exhibit 1. Although the government has numbered its exhibit pages, the court will continue to cite to the various rules using their Federal Register citations.

by mail and requested public records. *See* Declaration of G. Provenzano. All but two PHAs responded, and of those responding, nine indicated that they included or intended to include the ten percent exception in their administrative plans. On July 8, 1988, HUD's Region X (Seattle) Office issued a PHA Circular discussing implementation of the federal preferences. PHA Circular NO. P88–19, July 8, 1988 (Def. Mem. exh. 2). HUD informed the PHAs that they must develop a "thorough" and "explicit" written policy defining when, why, and for whom the ten percent exception will be used. *Id.* at 13.

Plaintiffs challenge the ten percent exception, arguing that it is inconsistent with the language and purpose of the Section 8 statutes that enacted the federal preferences. 42 U.S.C. §§ 1437f(d)(1)(A) and (o)(3). Consequently, plaintiffs move for summary judgment, asking the court to declare the exception unlawful and to set it aside under the APA, 5 U.S.C. § 706(2)(A). In addition, plaintiffs ask the court to enjoin the federal defendants from approving any administrative plans of Washington PHAs that include this exception. In support of their cross motion for summary judgment, the federal defendants argue that plaintiffs' supplemental complaint should be dismissed because the ten percent exception constitutes a legitimate and appropriate construction and implementation of the federal preference statutes.

### III

### DISCUSSION

The APA empowers the court to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *LaMadrid v. Hegestrom*, 830 F.2d 1524, 1529 (9th Cir. 1987); 5 U.S.C. § 706(2)(A). Because the parties agree that no factual dispute exists, it is appropriate for the court to grant summary judgment to whichever party is entitled to judgment as a matter of law.

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Here, the court must determine a single legal question—the validity of the ten percent regulatory exception to the Congressionally mandated preferences set forth in 42 U.S.C. §§ 1437f(d)(1) and (o)(3). Although the court agrees with HUD that the ten percent exception provides PHAs with needed flexibility, after a careful review of the statutory language and the legislative history, the court concludes that the ten percent exception runs contrary to Congress' intent and therefore, must be invalidated.

### A. *Standard of Review*

Because plaintiffs' challenge presents a pure question of construction of a statute administered by the Secretary, the relevant regulations' validity initially depends on upon whether Congress has directly spoken on the precise question at issue. *Fernandez v. Brock,* 840 F.2d 622, 631 (9th Cir. 1988) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The court's first duty is "to try to determine congressional intent using 'traditional tools of statutory construction.' " *NLRB v. United Food & Com'l Wkrs. Union,* —— U.S. ——, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987). If congressional intent is ascertainable, then it must be given effect, and the regulations at issue must be fully consistent with it. *Id.* If the court finds Congress' intent unclear with respect to the specific issue, the court must defer to the Secretary's interpretation of the statute "if it 'is based on a permissible construction of the statute.' " *Fernandez,* 840 F.2d at 631 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782). Administrative construction of a statute is "permissible" if it is "rational and consistent with the statute." *United Food & Com'l Wkrs.,* 108 S.Ct. at 421.[7]

---

7. The court notes that the question of when a court should defer to agency interpretation is the subject of some controversy. *See NLRB v.*

*United Food & Com'l Wkrs. Union,* —— U.S. ——, 108 S.Ct. 413, 426, 98 L.Ed.2d 429 (1987) (Scalia, J., concurring) (pointing out that contrary to

## B. *Congressional intent*

To determine if Congress unambiguously expressed its intent on the issue at hand, the court looks first to the statutory language. The statute governing the Certificate Program provides:

Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that

(A) The selection of a tenant for such unit shall be the function of the owner, subject to the provisions of the annual contributions contract between the Secretary and the agency, except that the tenant selection criteria used by the owner shall give preference to families which occupy substandard housing, are paying more than 50 per centum of family income for rent, or are involuntarily displaced at the time they are seeking assistance under this section.

42 U.S.C. § 1437f(d)(1). In creating the Voucher Program, Congress provided that

[i]n selecting families to be assisted, preference shall be given to families which, at the time they are seeking assistance, occupy substandard housing, are involuntarily displaced, or are paying more than 50 per centum of family income for rent ...

42 U.S.C. § 1437f(*o*)(3).

The Secretary and plaintiffs offer different interpretations of what the statutory language means. Plaintiffs contend that the language "shall give preference to families" and "preference shall be given to families" means just what HUD originally concluded in its Proposed Rule—the federal preferences have "primacy" over nonfederal preferences in all circumstances. 49 Fed.Reg. at 37788. The Secretary contends that the statutes do not define "preference" and that Congress left room for preference to be given in nine out of every ten certificates in order to provide PHAs with a slight bit of control. In explaining this new interpretation of the statutory language, HUD's final regulation states that

[t]he statute and legislative history require only that 'preference' be given to 'families' in one of the three preferred categories. Use of the plural, 'families,' indicates that preference is to be accorded to a *class* of applicants, not to *each* individual applicant. The term 'preference' can have a range of meanings—from providing some advantage in the selection process to guaranteeing preferred candidates the next available rental assistance. Providing preference to a class of applicants suggests a general mandate that, unless 'preference' is construed in its most preemptive sense, may permit some individual non-preferred applicants to take precedence over precedence-holders in the tenant process.

53 Fed.Reg. 1125–26 (Jan. 15, 1988) (emphasis in original). While granting PHAs a small measure of discretion may constitute good public policy, the Secretary's interpretation conflicts with Congress' intent.

To adopt the Secretary's interpretation of the statutory language, the court would have to ignore the plain meaning of the statutory terms and the structure of the NHA. A fundamental rule of statutory construction requires that, unless otherwise defined, words will be interpreted according to their ordinary, contemporary, common meaning. *Bresgal v. Brock*, 833 F.2d 763, 766 (9th Cir.1987). Plaintiffs point out, and the federal defendants have not contended otherwise, in the federal housing context the term "preference" has always meant that an applicant or class of applicants would be housed ahead of those without a preference. *See e.g.*, 24 C.F.R. § 812.3(e) (implementing "preference" for elderly and displaced persons pursuant to 42 U.S.C. § 1437a(b)(3)); 7 C.F.R. § 1910.10

some lower courts' views of dicta in *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), the test for whether a court must defer to an agency's construction of a statute it administers is whether "the statute is silent or ambiguous with respect to the issue"); *see also Fernandez v. Brock*, 840 F.2d 622,

631 (9th Cir.1988) (noting Justice Scalia's concurrence). In any event, the court's explanation of the standard of review accurately synthesizes the Supreme Court's standards for reviewing the validity of the Secretary's construction of the federal preference statutes.

(implementing veterans preference in FMHA loan programs pursuant to 42 U.S.C. § 1477). In addition, the Secretary's view of the term preference as having a range of meanings does not conform with the common, ordinary meaning of the term as "the selecting of someone or something over another or others". *The American Heritage Dictionary*, (New College Edition, 1978). *See also The Random House Dictionary of the English Language*, Unabridged (1979) (defining preference as "a practical advantage given to one over others"). Moreover, HUD reaches its rather strained interpretation of the statutory language by attaching undue significance to the statutes' use of the plural "families." Congress makes it a practice to use the plural in describing who should get a preference in Federal housing programs.[8]

The Secretary's interpretation of Congress' intent would also require the court to ignore its duty "to give significance to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." *Bresgal*, 833 F.2d at 766. Treatment of these same preferences in other parts of the NHA manifestly demonstrates that Congress intended that PHAs honor the federal preferences without exception in the Certificate and Voucher Programs. For example, in simultaneously enacting the federal preferences in the public housing context, Congress expressly authorized an exception for certain elderly projects. 42 U.S.C. § 1437d(c)(4)(A). In addition, Congress expressly provided HUD discretion in the public housing context to implement the preferences so as to accommodate the conflicting goal of avoiding a concentration of low-income families. *Id.* By contrast, in both the Certificate and Voucher Program statutes, Congress created the preferences without expressly or implicitly recognizing any exceptions. As the Supreme Court has often stated, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is gener-

ally presumed that Congress acts intentionally and purposely in the disparate inclusion and exclusion." *Cardoza–Fonseca*, 107 S.Ct. at 1213 (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)).

The Secretary, however, points out that Congress expressly stated that "it is the policy of the United States ... consistent with the objectives of [the NHA], to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. § 1437 ("Declaration of Policy"). In exercising their responsibility to administer their Voucher and Certificate Programs, PHAs have adopted their own non-federal preferences. Consequently, to justify the ten percent exception, the Secretary argues that Congress could not have intended the federal preferences to totally exclude non-federal preferences from the lower-income housing calculus. To do so would, in the Secretary's view, violate Congressional policy underlying allocation of lower-income housing resources.

The court finds no conflict between Congress' mandate that the federal preferences apply to all certificates and vouchers and the policy of vesting PHAs with the maximum amount of responsibility. Congress expressly limited its policy of maximizing local control by making it appropriate only where "consistent with the objectives of [the NHA]." *Brown v. Housing Authority of the City of Milwaukee*, 471 F.2d 63, 67 (7th Cir.1972) (discussing former 42 U.S.C. § 1401 now codified at § 1437); *Bloom v. Niagara Falls Housing Authority*, 430 F.Supp. 1183, 1191 (N.D.N.Y.1977). Here, the legislative history makes it clear that Congress' objective was to provide a "priority" to federal-preference groups because "in a period of reduced funding for assisted housing, the programs should be directed toward those families who have housing needs which require more urgent attention." H.R.Rep. No. 96–153, 96th Cong., 1st Sess. 16 ("H.Rep."), *reprinted*

---

8. *E.g.*, 12 U.S.C. § 1715z–2(d) ("families"); 42 U.S.C. § 1437a(b)(3) ("persons"); 42 U.S.C. § 1477 ("veterans and families of deceased servicemen"); 42 U.S.C. § 1575(c) ("veterans or servicemen ... and their families"); 42 U.S.C. § 1581(d) ("families of disabled veterans").

*in,* 1979 U.S. Code Cong. & Ad. News ("USCCAN") 2317, 2320 and 2332; H.Conf. Rep. No. 96–706, 1st Sess. 55 ("Conf. Rep."), *reprinted in,* 1979 USCCAN 2317, 2414; S.Rep. No. 98–142, 98th Cong., 1st Sess. 3, 32–33 ("Sen.Rep."), *reprinted in,* 1983 USCCAN 1770, 1774, 1803–04. Given that Congress itself established this objective and identified the groups most in need of dwindling housing resources, PHAs must choose program participants in a manner consistent with the Congressional objective. *See* 42 U.S.C. § 1437; *Housing Authority of the City of Milwaukee,* 471 F.2d at 67; *Niagara Falls Housing Authority,* 430 F.Supp. at 1191. Consequently the court concludes that requiring PHAs to select Certificate and Voucher program participants from applicants qualified for a federal preference, does not violate the policy of maximizing local involvement. Moreover, PHAs retain their discretion to employ non-federal preferences to select from among those families that qualify under one or more of the federal preferences.

Having determined that the plain language of sections 1437f(d)(1) and (o)(3) and the structure of the NHA. manifestly demonstrate that the ten percent exception does not conform to Congress' intent underlying the federal preferences, the court need not look any further into the legislative history. *Cardoza–Fonseca,* 107 S.Ct. at 1213 n. 12. The Secretary, however, cites to statements in the legislative history that would, if left unexplained, question the strong presumption that Congress expresses its intent through the language it chooses. *See id.* In fact, however, the legislative history cited by the Secretary reinforces the court's conclusion that the ten percent exception is manifestly inconsistent with Congressional intent.

In enacting the original federal preferences in 1979, both the House Committee and the Conference Committee stated that the "priority" for the federal preference families is

> intended to guide the owner and PHA in determining which potential tenants to select. *The priority is not intended nor should it be used to allow the Department to direct an owner or PHA to select certain tenants. It would be unacceptable and clearly not authorized by this provision for the Department to require a PHA or owner to select tenants from a list developed by the Department.* This provision is not intended to alter the basic responsibility over tenant selection which, under current law, rests solely with the PHA and the owner. It is simply intended to have owners and PHAs give priority to meeting urgent housing needs of those families living in substandard conditions or being involuntarily displaced.

H.Rep., 1979 USCCAN 2317, 2332; Conf. Rep., 1979 USCCAN 2317, 2414 (emphasis added). The quoted statement can be better understood in the context of how the Section 8 Existing Housing Program operates.

Under the program, the Secretary enters into annual contributions contracts with PHAs to make housing assistance payments to owners of existing dwelling units on behalf of eligible low-income families. 42 U.S.C. § 1437f(b)(1). PHAs have responsibility for accepting applications, determining a family's eligibility, maintaining a waiting list, selecting participants, and issuing certificates (or vouchers) to eligible families in accordance with HUD regulations. *See* 24 C.F.R. § 882.116. While § 1437f(d)(1) refers to tenant selection criteria used by an "owner", in reality it is the PHA that selects the family to receive the housing assistance. *See id.* The owner, of course can ultimately decide whether he wishes to rent to a particular family holding a certificate or voucher.

In support of their contention that Congress did not intend to require 100 percent primacy of federal preferences, the federal defendants characterize the quoted legislative history as demonstrating that the federal preferences were intended as a "general guideline," rather than mandatory in every instance. However, the federal defendants base their interpretation on an incomplete quotation, omitting the sentences the court has underlined for empha-

sis.[9] The omitted sentences conform to the reality of the program's operation. Clearly, Congress expected PHAs to retain responsibility over *which applicant* to select as tenants. Equally clear is Congress' intent that PHAs would select applicants first from those families who qualified for a federal preference. Likewise, Congress preserved the owner's right to refuse to rent to a particular PHA-selected family for legally permissible reasons.

Legislative history available for the 1983 amendments, which added the third federal preference and created the Voucher program, further demonstrates Congress' intent that federal preferences be respected in every instance. In describing S. 1338, in which these provisions originated, the Senate Committee on Banking, Housing and Urban Affairs stated:

> Finally, the new housing payment certificate program will focus assistance on the neediest families. Local public housing agencies *must also give priority* to families who occupy substandard housing, are involuntarily displaced, or are paying more than one-half their income for rent.

S.Rep., 1983 USCCAN 1770, 1774 (emphasis added).[10] The report went on to explain that

> . These preferences follow the recommendations of the President's Commission on Housing in an effort *to assure that the limited number of certificates and other assistance ... available under current budget constraints go to the families with the greatest housing needs.*

*Id.,* 1983 USCCAN at 1804 (emphasis added).

Thus, Congress legislatively determined which families were most in need of assistance and required that limited housing resources go to families within those groups, leaving to the PHA and owner the actual selection of individual family-applicants. In the legislative history cited above, Congress repeatedly interchanges the terms "preference" and "priority" to express its intention. Priority has a well recognized legal definition as follows:

> A legal preference or precedence. When two persons have similar rights in respect of the same subject-matter, but one is entitled to exercise his right to the exclusion of the other, he is said to have priority.

*Black's Law Dictionary* (5th ed. 1979).

Given the plain meaning of the statutory language, the structure of the NHA, and the legislative history, the court finds Congress' intent clear and unambiguous with respect to the primacy of federal preferences in the selection of *each* family-participant in the Certificate and Voucher Programs. Because the court finds Congress' intent easily ascertainable, the court cannot defer to the Secretary's interpretation of the statute. *See Fernandez,* 840 F.2d at 631 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782). The court fully understands the federal defendants' view that the ten percent exception provides PHAs needed flexibility to respond to emergency situations. However, this is an argument that must be addressed to Congress. As the statute now stands, the ten percent exception runs contrary to Congress' expressed intention to target limited housing resources to those families who qualify for a federal preference in the Certificate Program, 42 U.S.C. § 1437f(d)(1), and the Voucher Program, 42 U.S.C. § 1437f(o)(3). Consequently, because the court must give effect to Congressional intent and the regulations at issue must be fully consistent with it, the court must invalidate the ten percent exception. *See United Food & Com'l Wkrs.,* 108 S.Ct. at 421.

IT IS NOW, THEREFORE, ordered as follows:

The court GRANTS plaintiffs' motion for summary judgment and DENIES the federal defendants' cross motion. The court declares unlawful the ten percent exception

---

**9.** The Federal defendants' brief replaces these sentences with ellipses.

**10.** These provisions also originated as H.R. 1. However, neither H.R. 1 or S. 1388 were enacted. The preference provisions and the Voucher Program were enacted into law as part of the Supplemental Appropriations Act, H.R. 3959. None of the legislative history accompanying H.R. 3959 discuss the federal preferences.

to be codified at 24 C.F.R. § 219(b)(2)(ii), and SETS ASIDE the exemption pursuant to 5 U.S.C. § 706(2)(A). The court enjoins the federal defendants from approving any administrative plans of PHAs located in the State of Washington that include this exception.

IT IS SO ORDERED.