Merrimack
No. 89-398

THE STATE OF NEW HAMPSHIRE

v.

HARRY PLACE

November 15, 1990

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief for the defendant.

HORTON, J. On appeal from his conviction and sentence for illegal night hunting, RSA 208:8, II, the defendant assigns error to the denial by the Superior Court (*Dunn*, J.) of his motion to dismiss, made at the close of the State's case. The motion adequately preserves for appeal the defendant's claim of insufficient evidence to support conviction.

RSA 208:8, II provides, in part, that a person is guilty of a misdemeanor if he "[k]nowingly uses an artificial light between ½ hour after sunset and ½ hour before sunrise to illuminate, locate, or attempt to locate wild birds or wild animals while having in his possession or in a motor vehicle . . . [a] shotgun . . . with live ammunition to fit the weapon, whether loaded or unloaded." On appeal, the defendant relies on the claim that the evidence was insufficient to prove "use" by the defendant of an artificial light, an essential element of the crime as charged. We reject this claim, and affirm the conviction.

The evidence, construed most favorably to the State, shows that on the evening of November 5, 1987, Ronald Evans, a New Hampshire Fish and Game Department agent, parked next to a field in Salisbury to investigate a report of nighttime shooting. A visit by him two nights earlier had confirmed that deer were in the field at night, and they were uncharacteristically skittish at the sight of his headlights. The sun had set at 4:30 or 4:35 p.m. and Officer Evans, accompanied by an officer trainee, had taken up surveillance at about 8:45 p.m. At about ten o'clock, Officer Evans observed a vehicle moving very slowly on the public way. It passed the entrance road to the field, stopped, backed up, and negotiated the road to the edge of the field. The officer then observed the vehicle turn very slowly to the left. From its angle of entry to the field, this maneuver caused the vehicle's lights, in a half-circle turn, to illuminate all parts of the field. The vehicle then backed very slowly through the same arc, again illuminating the field. It backed into a small turn-around. This final maneuver caused the headlights to shine in the direction of the watching officers. The observed vehicle then headed out of the access road and north on the public way at a high rate of speed. Officer Evans gave chase.

Officer Evans had full vision of the vehicle during its visit to the field. The night was moonlit, so he was able to determine that it was a pick-up truck and that no one left or entered the vehicle. During the short chase, the vehicle was under observation at all times.

Upon stopping the vehicle, Officer Evans determined that there were three occupants: the defendant, as a passenger in the right front; the defendant's daughter, in the middle front; and the daughter's boyfriend, in the driver's seat. The officer also found an unloaded 12-gauge shotgun lying on the vehicle's dashboard, with the grip in front of the defendant and the barrel pointing in the direction of the driver. On a pat search of the defendant, three 12-gauge shells, slug load, were found in the defendant's pocket. Officer Evans issued summonses to the defendant and the driver to answer the charge of illegal night hunting, RSA 208:8.

At the close of the State's case, the defendant moved to dismiss on the ground that the State had failed to present any evidence to prove that the defendant had committed any physical act in violation of RSA 208:8. The court denied the defendant's motion. After the defense presented its case, the court instructed the jury as to the elements of the crime charged:

> "[T]he State must prove: One, that the defendant acted knowingly; two, that the defendant used an artificial light [at night]; three, that in the defendant's use of that light, it was his purpose to attempt to locate wild birds or wild animals; and four, that at the time the defendant had in his possession in his motor vehicle, a shotgun and live ammunition to fit that shotgun, whether it was loaded or unloaded."

The court did not further define the phrase "used an artificial light."

On appeal, the defendant asserts that a physical act necessary for conviction is the use of an artificial light, and that this act was unproven. He contends that, because the State proffered no evidence to show that the defendant controlled the pick-up truck headlights, the record did not support a finding that he "used" the lights in the manner contemplated by RSA 208:8, II. If the proscribed "use" requires direct control of the artificial light by the defendant, he is correct in asserting that there is no evidence on the record of such direct control. On the other hand, if "use" includes the defendant's availing himself of the artificial light provided by a source outside of his direct control, then, taking the evidence and all reasonable inferences arising therefrom in the light most favorable to the State, *State v. Place*, 128 N.H. 75, 79, 513 A.2d 321, 324 (1986), and applying the

presumption of knowledge from possession of the shotgun slugs, RSA 208:8, IV-b (Supp. 1989), the record would have supported a finding of guilt of the crime charged.

■ We must determine what constitutes "use" under RSA 208:8, II. The legislature has mandated that we construe the words of this statute according to their common and approved usage. *See* RSA 21:2; *State v. Hart*, 130 N.H. 325, 326, 540 A.2d 859, 859 (1988) (quoting *Dover Professional Fire Officers Ass'n v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 868–69 (1983)). The verb "to use" is commonly understood to be a synonym for, *inter alia*, "avail," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961), and thus describes the actions of the defendant, who "used" the pick-up truck lights in the sense of having availed himself of their benefit. *See Commonwealth v. Giannino*, 371 Mass. 700, 702–03, 358 N.E.2d 1008, 1010 (1977); *United States v. Miller*, 379 F.2d 483, 485 (7th Cir.), *cert. denied*, 389 U.S. 930 (1967).

■ This definition is consistent with a commonsense reading of the statute. One should not be able to engage in the forbidden acts merely by putting the artificial light source in the hands of another.

■ As the defendant has provided no evidence that would require us to construe RSA 208:8, II otherwise, and as there is no dispute either that the defendant availed himself of the headlights or that the other elements of this provision were proved by the State at trial, we hold that there was sufficient evidence for the jury to find that the defendant used an artificial light for purposes prohibited by RSA 208:8, II.

*Affirmed.*

All concurred.