Department of Labor
No. 94-681

# APPEAL OF NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY

## (New Hampshire Department of Labor)

### March 7, 1996

*Jeffrey R. Howard*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, on the brief and orally), for the petitioner.

*Silverman, Penna, Pike & Gaige*, of Dover (*Stephen E. Gaige* on the brief and orally), for the respondent.

JOHNSON, J. The respondent, Maurice Tandy, filed a complaint pursuant to the Whistleblowers' Protection Act, RSA chapter 275-E, against the petitioner, New Hampshire Department of Employment Security (DES). *See* RSA 275-E:4, I (Supp. 1995). He alleges that the DES discharged him for reporting its violation of a federal veterans' preference law. *See* 38 U.S.C. § 4103A(a)(1) (1988); RSA 275-E:2, I(a) (Supp. 1995). The New Hampshire Department of Labor (DOL) found the complaint valid, and the DES appeals. *See* RSA 275-E:4, II (Supp. 1995); RSA 541:6 (1974). We affirm.

Tandy is a disabled, Vietnam-era veteran. He began working part-time in the DES' Portsmouth office in February 1992. In August of that year, he applied for a full-time DES position in Manchester in the disabled veteran outreach program (DVOP). Darrell Gates, manager of the Manchester office, interviewed Tandy for the job and later informed him that another person had been selected. The person chosen is a disabled veteran, but not of the Vietnam era.

In a September 9 letter confirming his hiring decision, Gates described all who interviewed as "well qualified." DES general counsel Michael Black later dismissed the significance of this mailing, describing it as a standard "can letter." According to Black, Gates determined that Tandy was *not* qualified for the Manchester DVOP job. At the DOL hearing, Gates himself simply testified that Tandy was not "the best candidate."

Tandy questioned Gates about the hiring decision, both in a September 14 telephone conversation and in a September 29 letter. In the letter, Tandy wrote that "an honest mistake may have occurred in the decision to hire [the other veteran] rather than myself." He cited 38 U.S.C. § 4103A(a)(1), which states that "[p]reference shall be given in the appointment of [DVOP positions] to qualified disabled veterans of the Vietnam era." Tandy wrote a similar letter the next day, September 30, to David Houle, the director of the United States Department of Labor (USDOL) Veterans Employment and Training Service. In this letter, Tandy asked Houle to "open a formal investigation." The same day, the DES stopped providing Tandy with hours for work. At the DOL hearing, his supervisor cited lack of funding as the reason.

Tandy met with Gates, Houle, and others on October 7 to discuss the Manchester DVOP hiring decision. Again, Tandy expressed his concern about the application of 38 U.S.C. § 4103A(a)(1). The next day, Tandy wrote to Houle that

[a]fter hearing the explanations of the hiring practices . . . and your professional interpretation of the word "prefer- ence" as it applies in this case I can understand why the selection of [the other veteran] was made over myself.

I have no more questions dealing with this issue. I will put it behind me and go on to more important things.

On October 15, Houle wrote Tandy a letter "acknowledg[ing] the closing of the informal DVOP appointment review, in accordance with my understanding of your letter of October 8, 1992."

Tandy then wrote to Thomas Norris, a DES worker and a local veteran employment representative involved with the American Legion as chairman of its veterans' preference and economics committee. In this letter, dated October 16, Tandy related most of the events described above, including the chosen veteran's status as a disabled, non-Vietnam-era veteran. Houle learned of the letter and called another meeting, held on October 21, at which the preference issue was again discussed.

Meanwhile, another DVOP position opened up, in Laconia, and Tandy interviewed for it in late December. Black, the DES general counsel, then called a meeting. In reviewing Tandy's application for the Laconia position, he had become concerned that Tandy had violated DES confidentiality requirements by disclosing information to Norris about the veteran hired for the Manchester DVOP position. A confidentiality form signed by Tandy states that a breach "is sufficient cause for immediate discharge." Black was also troubled by Tandy's interpretation of veterans' preference law. He testified, however, that if "[Tandy's] account was satisfactory on those two issues, it was my intention that he be hired for that position in Laconia."

Black's meeting took place on January 21, 1993. The Laconia DES manager who had interviewed Tandy and the DES assistant director of operations were in attendance, in addition to Black and Tandy. During the discussion, Tandy satisfied Black that he would not breach a DES confidence again but continued to disagree with the DES' interpretation of veterans' preference law.

Tandy was not hired for the Laconia position, and his services with the DES were officially terminated effective February 10, 1993. His termination letter cited the preference law disagreement, characterizing it as "particularly disturbing since the position in Laconia would be to administer programs regarding veterans['] preference . . . . Regretfully, this combined with your failure to follow procedures regarding the release of confidential information

establishes a pattern of behavior inconsistent with this Department's missions[,] objectives, and policies[.]"

Tandy requested an appeal from DES Commissioner John Ratoff, but Ratoff deemed Tandy's part-time status a bar to such a remedy. Tandy then turned to the New Hampshire Personnel Appeals Board for relief, but the board similarly dismissed his claim.

Meanwhile, USDOL regional administrator Norman Ahlquist came to the conclusion that the DES had erred in its interpretation of veterans' preference law. In January 1994, Ahlquist and Ratoff negotiated a settlement whereby the Manchester DVOP position would be reposted and all interested applicants considered. This was done, with Tandy in the applicant pool, but he was not selected.

Tandy filed this complaint on February 10, 1994. The DES responded with a motion to dismiss. Upon receipt of the motion, the DOL informed the parties that it "chooses to take no action on the *Motion to Dismiss*, as the issues raised may more properly be argued before a hearings officer before this Department." On July 7, 1994, following a hearing, the DOL ruled Tandy's complaint valid. The DOL specifically found Tandy to be a qualified, disabled, Vietnam-era veteran, and concluded:

> [T]he employer discharged the claimant and also failed to consider him in a fair light when subsequent DVOP positions became open due to the fact that the claimant reported, both verbally and in writing, what he had a reasonable cause to believe was a violation of a law or rule adopted under the laws of the United States, specifically 38 USC, and that the claimant brought the alleged violation of 38 USC to the attention of people having supervisory authority with the employer, allowing them a reasonable opportunity to correct the violation.

In reaching this conclusion, the DOL found:

> [T]he release of confidential information regarding [the status of the veteran hired for the Manchester position] was apparently not so serious in the eyes of the NHDES that it could not have been taken care of at the January 21, 1993 "counselling session" at which the Department was apparently ready to forgive any infraction of the confidentiality breach made by the claimant if he stated that he understood that the information . . . was confidential, and in light of the fact that the January 21, 1993 meeting was also to discuss the DVOP position in Laconia with the claimant.

The DES moved to reconsider. The DOL denied the motion, and the DES appealed to this court.

This case involves the application of the Whistleblowers' Protection Act, RSA chapter 275-E, which prohibits employers from retaliating against an employee for reporting what he or she reasonably believes is a violation of the law. The alleged violation Tandy reported is the decision not to hire him for the Manchester DVOP position. *See* RSA 275-E:2, I(a). According to the DOL, the retaliation for the reporting is Tandy's September 30 layoff and the DES' decision not to hire him for the subsequent DVOP positions.

■ At the outset, it is important to note what is not at issue. The DES does not argue that Tandy failed to give it a reasonable chance to correct the alleged violation of veterans' preference law before reporting it to persons other than DES supervisors. *See* RSA 275-E:2, II (Supp. 1995). Moreover, although at oral argument the DES denied firing Tandy for reporting the alleged violation, the DES did not make this point in its notice of appeal. We therefore do not consider it. *See* SUP. CT. R. 16(3)(b); *State v. Peterson*, 135 N.H. 713, 714-15, 609 A.2d 749, 750-51 (1992).

Our standard of review is dictated by RSA 541:13 (1974):

> Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commissioner to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

*See Appeal of State of N.H.*, 138 N.H. 716, 719, 647 A.2d 1302, 1305 (1994).

*I. Jurisdiction*

In its brief, the DES first argues that the DOL lacked jurisdiction to hear Tandy's complaint because 38 U.S.C. § 4103A "does not involve issues of federal law which are within the meaning of RSA 275-E:2, I(a)." RSA 275-E:2, I(a) states:

> I. No employer shall discharge, threaten or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:

(a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of *any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States. . . .*

(Emphasis added.) As noted above, 38 U.S.C. § 4103A(a)(1) provides that "[p]reference shall be given in the appointment of [DVOP positions] to qualified disabled veterans of the Vietnam era." The DES argues that the term "preference" is undefined and ambiguous and that therefore there is no alleged violation of law within the meaning of RSA 275-E:2, I(a).

■ We disagree. The parties' disagreement as to the meaning of "preference" does not render 38 U.S.C. § 4103A(a)(1) anything other than what it is: a law of the United States. Tandy reported what he reasonably believed to be a violation of 38 U.S.C. § 4103A(a)(1). *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1787 (unabridged ed. 1961) (WEBSTER'S) (defining "preference"); *cf. Drake v. Pierce*, 698 F. Supp. 1523, 1527-28 (W.D. Wash. 1988) (interpreting federal housing preference law). In doing so, he necessarily invoked the protections of RSA chapter 275-E. RSA 275-E:2, I(a); *see generally Appeal of Bio Energy*, 135 N.H. 517, 521, 607 A.2d 606, 609 (1992). Many laws and rules are open to differing interpretation, *see, e.g., State v. Place*, 133 N.H. 700, 702-03, 582 A.2d 616, 618 (1990); if we were to adopt the DES' view, the Whistleblowers' Protection Act would be eviscerated.

■■ The DES next argues that the DOL lacked jurisdiction to hear Tandy's complaint because the DES corrected any violation of the law when it reposted the Manchester DVOP position. Even assuming the DOL's action "corrected" the violation, we disagree with the DES' interpretation of RSA 275-E:2. The act protects employees from *retaliation* for reporting alleged violations of law, not just for the violations themselves. Whether a violation is, in fact, corrected is immaterial to the question of the DOL's jurisdiction. In *Appeal of Bio Energy*, for example, the employer fired the claimant *after* it corrected the violation she reported. *Appeal of Bio Energy*, 135 N.H. at 518, 607 A.2d at 607. This court held the protections of the statute applicable. *Id.* at 521, 607 A.2d at 609.

■ Next, the DES argues that the DOL lacked jurisdiction because Tandy failed to exhaust his administrative remedies. Citing RSA 275-E:4, I, the DES maintains that Tandy should have pursued to conclusion his appeal with the personnel appeals board before filing his complaint pursuant to the Whistleblowers' Protection Act.

RSA 275-E:4, I, however, contains no such requirement. It reads, in pertinent part:

> Any employee who alleges a violation of rights under RSA 275-E:2 or 3, *and who has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment*, may obtain a hearing with the commissioner of labor or a designee appointed by the commissioner.

(Emphasis added.) Tandy attempted to appeal his discharge to DES Commissioner Ratoff. Ratoff, however, denied his appeal because Tandy had been only a part-time employee. Tandy's effort at redress within the DES fulfilled the condition of RSA 275-E:4, I.

## II. Procedure

The DES next alleges several errors in the procedure used by the DOL to adjudicate Tandy's complaint and asserts a denial of State and federal due process in each instance. A state agency, however, "cannot invoke the protection of the Fourteenth Amendment against the State itself," *Arkansas State Hospital v. Goslee*, 623 S.W.2d 513, 515 (Ark. 1981), because the federal due process clause protects "person[s]," not governments. U.S. CONST. amend. XIV, § 1; *see South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966) (fifth amendment). The State due process clause similarly protects only "subject[s]." N.H. CONST. pt. I, art. 15. We therefore do not address the constitutional aspect of the DES' claims of error.

The DES first argues that the DOL's failure to rule on its proposed findings of fact constitutes reversible error. In support, the DES cites RSA 541-A:20 (Supp. 1993) (recodified at RSA 541-A:35 (Supp. 1995)), which stated: "If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding." The DES also cites *Petition of Betty Sprague*, 132 N.H. 250, 264-65, 564 A.2d 829, 838-39 (1989), in which we held that RSA 541-A:20 obligated the State Board of Registration in Medicine to rule upon each proposed finding of fact.

■ We grounded our decision in *Petition of Betty Sprague* in an agency's rule that specifically allowed a party to file proposed findings of fact. *Petition of Betty Sprague*, 132 N.H. at 264, 564 A.2d at 838. RSA 541-A:20, we pointed out, required agencies to rule on a party's proposed findings only if it submitted the findings "in accordance with agency rules." *Id.* (quotation omitted). The DOL's

rules do not specifically allow a party to submit proposed findings of fact, nor do they otherwise reference this type of submission. N.H. ADMIN. RULES, Lab 203-04. The DES therefore did not submit proposed findings of fact "in accordance with agency rules," RSA 541-A:20, and the DOL was not obligated to rule on them.

■ The DES next argues that the DOL erred in considering Tandy's complaint as evidence. We agree with the DES that pleadings are not evidence, see BLACK'S LAW DICTIONARY 656, 1311-12 (4th ed. 1968), and it does appear that the DOL hearings officer confused the two. The DES, however, fails to meet its burden of proving that this error materially prejudiced it. See Attitash Mt. Service Co. v. Schuck, 135 N.H. 427, 430, 605 A.2d 1067, 1070 (1992). The DOL's decision does not purport to rely on Tandy's complaint. Cf. Appeal of City of Portsmouth, Bd. of Fire Comm'rs, 137 N.H. 552, 557, 630 A.2d 769, 772 (1993). Moreover, the DES does not point to any aspect of the DOL decision that can be sustained only by reference to the complaint. We therefore find no reversible error.

■ Finally, the DES argues that the DOL erred in refusing to rule on its motion to dismiss. Again, we find no reversible error. Upon receipt of this motion, the DOL notified the parties that it thought the issues raised "may more properly be argued before a hearings officer." Thus, the DOL chose to have argument on the motion heard before a hearings officer, a decision well within its discretion. See N.H. ADMIN. RULES, Lab 202.02. In ruling Tandy's complaint valid, the DOL implicitly denied the DES' motion to dismiss. For the sake of completeness and clarity, an agency should explicitly rule on every motion made to it, but the DOL's action here in no way prejudiced the DES so as to warrant a reversal.

*III. "Preference"*

■ The DES next contends that the DOL erred in construing 38 U.S.C. § 4103A(a)(1) to mean that it should have hired Tandy for the Manchester DVOP position. We note that RSA 275-E:2, I(a) protects employees from retaliation for reporting what they have *"reasonable cause to believe* is a violation of any law or rule." (Emphasis added.) Thus, the DOL's ruling on the validity of Tandy's complaint did not depend on an actual violation of 38 U.S.C. § 4103A(a)(1).

The statute in contention provides:

> Each such [DVOP] specialist shall be a qualified veteran. Preference shall be given in the appointment of such specialists to qualified disabled veterans of the Vietnam era. If the Secretary finds that a qualified disabled veteran of

the Vietnam era is not available for any such appointment, preference for such appointment shall be given to other qualified disabled veterans. If the Secretary finds that no qualified disabled veteran is available for such appointment, such appointment may be given to any qualified veteran.

38 U.S.C. § 4103A(a)(1). The DES argues that "preference" is not a guarantee of a job. We must decide whether the DOL could have found that Tandy reasonably believed he was entitled to the Manchester position and, therefore, reasonably believed that the DES violated a law.

■ As the DES acknowledged in oral argument, the real dispute here is not over the term "preference." If two qualified, disabled veterans apply for a DVOP job, one a Vietnam-era veteran, and the other not, the federal statute plainly affords the Vietnam-era veteran priority in hiring. That is, the Vietnam-era veteran must be hired over the non-Vietnam-era veteran. *See* WEBSTER'S, *supra* at 1787; *cf. Drake*, 698 F. Supp. at 1527-28. The question, then, is whether Tandy reasonably believed he was a *qualified*, disabled, Vietnam-era veteran. Darrell Gates, the DES manager who made the hiring decision for the Manchester position, sent Tandy a letter describing him as "well qualified." DES general counsel Black dismissed this letter as a standard "can letter," but we think it was reasonable for Tandy to believe that Gates meant what he said. We therefore uphold the DOL's finding that Tandy had reasonable cause to believe that the DES violated a law.

*IV. Confidentiality Breach*

■ ■ Citing Tandy's breach of confidentiality, the DES next argues that the DOL should have either dismissed Tandy's complaint or denied him relief because the DES had a legitimate, non-retaliatory reason for firing him. The DES invokes the mixed-motive and after-acquired evidence doctrines. Under the mixed-motive doctrine, if an employer discharges an employee for both a lawful and an unlawful reason, and the lawful reason would have sufficed to justify the discharge, the employee cannot prevail in a suit against the employer. *See, e.g., Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 285-87 (1977) (modified on other grounds by 5 U.S.C. § 1221(e)(2) (1994)). Under the after-acquired evidence doctrine, if an employer discharges an employee for an unlawful reason and later discovers misconduct sufficient to justify a lawful discharge, the employee generally may not win reinstatement. *See, e.g., McKennon v. Nashville Banner Pub. Co.*, 115 S. Ct. 879, 886 (1995). Each doctrine potentially comes into play here because the

DES retaliated against Tandy both before and after learning of his confidentiality breach. The DOL deemed Tandy's September 30 layoff an illegally motivated discharge and likewise found that the DES failed, out of retaliation, to consider Tandy fairly when he applied for the Laconia DVOP position and the reposted Manchester job.

The DES' success under either doctrine depends on a showing that Tandy's confidentiality breach would have, by itself, resulted in his September 30 layoff and subsequent non-selection for full-time DVOP positions. The DOL, however, made a contrary finding:

> [T]he release of confidential information regarding [the status of the veteran hired for the Manchester position] was apparently not so serious in the eyes of the NHDES that it could not have been taken care of at the January 21, 1993 "counselling session" at which the Department was apparently ready to forgive any infraction of the confidentiality breach made by the claimant if he stated that he understood that the information . . . was confidential, and in light of the fact that the January 21, 1993 meeting was also to discuss the DVOP position in Laconia with the claimant.

This finding is adequately supported by the record; we therefore do not disturb it, *see* RSA 541:13, and the DES' argument must fail.

*V. Remedy*

The DES finally argues that the DOL erred in ordering it to offer Tandy a full-time DVOP position in the office of his choice. First, the DES contends that such a remedy is not "reinstatement," as permitted by RSA 275-E:4, I, because Tandy never held a full-time DVOP position. We agree that this remedy is not "reinstatement," *see* WEBSTER'S, *supra* at 1915, but the statute does not limit a whistleblowers' claimant to this type of relief. Instead, it allows the DOL to order "reinstatement of the employee, the payment of back pay, fringe benefits and seniority rights, *any appropriate injunctive relief*, or any combination of these remedies." RSA 275-E:4, I (emphasis added). The question, then, is whether the DOL's order here constitutes "appropriate injunctive relief." We hold that it does.

In *Appeal of Bio Energy*, this court interpreted an earlier version of RSA 275-E:4, I, in which "back pay" was not specifically listed as an allowable remedy. *Appeal of Bio Energy*, 135 N.H. at 521, 607 A.2d at 609. Citing public policy reasons, we held that the term "any appropriate injunctive relief" encompassed an order of back pay. *Id.* at 521-22, 607 A.2d at 609-10. We reasoned:

[A]uthorizing the DOL to vindicate public rights by putting a wrongfully discharged employee in the same position she would have been in had the employer acted lawfully furthers the legislative purpose of the Act. An employee is more likely to report violations if she knows that should she lose her job, she will not only be reinstated, but will also receive back pay. Similarly, an employer is more likely to take pains to comply with the Act if it knows that the DOL can order back pay to the wrongfully discharged employee.

*Id.* at 522, 607 A.2d at 610.

For similar reasons, we hold that the DOL's order constitutes "appropriate injunctive relief" under RSA 275-E:4, I. The DES failed to show that its decision not to hire Tandy for either the Laconia or the reposted Manchester position was justified by a reason other than retaliation. *See McKennon*, 115 S. Ct. at 886; *Mt. Healthy City Board of Ed.*, 429 U.S. at 285-87. Thus, we can say that but for the DES' breach of the Whistleblowers' Protection Act, Tandy would have been hired for a full-time DVOP position. Ordering the DES to place Tandy in such a position directly remedies this breach. As in *Appeal of Bio Energy*, "putting [Tandy] in the same position [he] would have been in had the employer acted lawfully furthers the legislative purpose of the Act." *Appeal of Bio Energy*, 135 N.H. at 522, 607 A.2d at 610.

Arguments not addressed in this opinion were considered and deemed meritless. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.