Department of Labor
No. 96-194

APPEAL OF OSRAM SYLVANIA, INC.

(New Hampshire Department of Labor)

February 27, 1998

*Ransmeier & Spellman P.C.*, of Concord (*Steven E. Hengen* and *R. Matthew Cairns* on the brief, and *Mr. Hengen* orally), for the petitioner.

*Kenneth A. Silverstein*, of Haverhill, Massachusetts, by brief and orally, for the respondent.

JOHNSON, J. The petitioner, Osram Sylvania, Inc., appeals a decision of the New Hampshire Department of Labor (NHDOL) that it violated the New Hampshire Whistleblowers' Protection Act (Whistleblowers' Act), *see* RSA ch. 275-E (Supp. 1997), when it discharged the respondent, L. Cletus Kijek, in July 1995 for filing a complaint with the United States Occupational Safety and Health Administration (OSHA). We affirm in part, vacate in part, and remand.

The following facts were adduced at the NHDOL hearing. In the summer of 1995, Kijek was employed at Osram's production plant in

Exeter. On more than one occasion, Kijek complained to his supervisor that the temperatures where he worked were excessive and reaching dangerous levels. On July 15, 1995, after management failed to remedy the heat problem to his satisfaction, Kijek informed his supervisor that he intended to file a claim with OSHA alleging a violation of 29 U.S.C. § 654 (1994) (OSHA Act). On July 17, 1995, Kijek filed a claim with OSHA's Concord office. He was terminated on July 26, 1995. While Kijek's termination letter states only that it was "apparent" that his employment at Osram was "not acceptable to either party," Osram asserted at the hearing that Kijek was terminated for filing a fraudulent workers' compensation claim and that the decision to terminate him had actually been made in 1994. The NHDOL found Osram's assertions not credible. Kijek filed a complaint pursuant to the Whistleblowers' Act with the NHDOL on August 2, 1995, alleging that he had been terminated in retaliation for filing the safety complaint with OSHA. He filed a similar complaint with the United States Department of Labor (USDOL) pursuant to section 11(c) of the OSHA Act. *See* 29 U.S.C. § 660(c) (1994). After a hearing on the merits, the NHDOL ordered Osram to pay Kijek back wages and reinstate him to his former position. This appeal followed.

On appeal, Osram argues that: (1) the NHDOL should have deferred to the USDOL's jurisdiction; (2) Kijek failed to satisfy the statutory elements of RSA 275-E:2; (3) Kijek failed to follow the grievance procedures mandated by the Whistleblowers' Act; and (4) the NHDOL erred in ordering Kijek's reinstatement.

*I. Primary Jurisdiction*

Osram argues that under the doctrine of primary jurisdiction, the NHDOL erred in refusing to defer its ruling pending a decision by the USDOL on Kijek's whistleblower complaint filed under section 11(c) of the OSHA Act. "[W]e have long recognized the doctrine of primary jurisdiction; namely, that a court will refrain from exercising its concurrent jurisdiction to decide a question until it has first been decided by a specialized agency that also has jurisdiction to decide it." *N.H. Div. of Human Services v. Allard*, 138 N.H. 604, 607, 644 A.2d 70, 72 (1994) (quotations omitted).

■■ Assuming, without deciding, that the doctrine of primary jurisdiction is applicable in cases where two administrative agencies possess concurrent jurisdiction, we find no error. Primary jurisdiction did not vest with the USDOL because its own administrative rules allow for postponement of proceedings by the USDOL and

deference to other forums, *see* 29 C.F.R. § 1977.18(a) (1997), where the claim asserted and factual issues underlying the claim are substantially the same, and "the forum hearing the matter . . . [has] the power to determine the ultimate issue of discrimination," *id.* § 1977.18(b) (1997); *cf. Bd. of Trustees v. Keene State Coll. Educ. Assoc.*, 126 N.H. 339, 342, 493 A.2d 1121, 1124 (1985) (court must defer where statute conferred primary jurisdiction to the PELRB). Here, both the Whistleblowers' Act and section 11(c) claims and the underlying facts are virtually identical. Furthermore, RSA 275-E:4 empowers the NHDOL to render judgment and order the appropriate remedy should it find a violation of the Whistleblowers' Act. Accordingly, by the terms of the USDOL's own regulations, it was appropriate for the NHDOL to proceed with its hearing.

## II. Elements

Osram next argues that Kijek failed to establish a *prima facie* case under the Whistleblowers' Act. RSA 275-E:2 provides in pertinent part:

> I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:

> (a) The employee, *in good faith*, reports or causes to be reported, verbally or in writing, what the employee has *reasonable cause to believe* is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States . . . .

(Emphasis added.) Osram argues that the "record contains no credible, objective evidence that Kijek acted in good faith or had reasonable cause to believe that [Osram] was violating any law when he filed his OSHA complaint."

■■ As a preliminary matter, we agree with Osram that in a Whistleblowers' Act hearing before the NHDOL, the employee bears the burden of establishing discrimination. *Cf. Appeal of Briand*, 138 N.H. 555, 557, 644 A.2d 47, 48 (1994) (in workers' compensation cases, claimant has burden of proving compensable accidental injury and extent of disability). On appeal, our review is governed by RSA 541:13 (1997). *See* RSA 275-E:4, II; *Appeal of N.H. Dept. of Employment Security*, 140 N.H. 703, 708, 672 A.2d 697, 701 (1996). Accordingly, the party challenging the NHDOL's decision must show, by a preponderance of the evidence, that the

ruling was clearly unreasonable or unlawful. The NHDOL's factual findings are presumed to be *prima facie* lawful and reasonable and will not be overturned absent a showing that the record does not contain sufficient evidence to support them. *See Appeal of Campaign for Ratepayers Rights*, 133 N.H. 480, 483, 577 A.2d 1230, 1232 (1990). Questions of law will be resolved in a way which best effectuates the manifest purposes of the act, *see Appeal of Bio Energy*, 135 N.H. 517, 519, 607 A.2d 606, 608 (1992); namely, "to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace." *Id.* at 521, 606 A.2d at 609.

■ Osram first argues that the NHDOL failed to find, and the record does not support, that Kijek acted in good faith in making his complaint to OSHA. We disagree. While the NHDOL order did not explicitly state that Kijek acted in good faith, it did state that Kijek's report of the alleged OSHA violation was "in compliance with RSA 275-E:2 I (a)." While the term "good faith" is not defined in the statute, "[w]e give a statutory term that is not defined its plain and ordinary meaning." *Board of Water Comm'rs, Laconia Water Works v. Mooney*, 139 N.H. 621, 626, 660 A.2d 1121, 1125 (1995). In the context of the Whistleblowers' Act, we define "good faith" as "absence of malice" and "honesty of intention." *See* BLACK'S LAW DICTIONARY 693 (6th ed. 1990); *cf. Texas Dept. of Crim. Justice v. Terrell*, 925 S.W.2d 44, 60 (Tex. Ct. App. 1995).

■■ Ample evidence supports a finding that Kijek reported the alleged violation to OSHA in good faith. There was testimony that Kijek had reported the alleged violation to his supervisor on more than one occasion, and filed the complaint with OSHA because he believed that "the company just didn't seem like they were going to do anything." Furthermore, Kijek had made complaints to OSHA in the past, some of which resulted in remedial action by Osram. While Osram argues that Kijek's act was simply another complaint filed in the course of an acrimonious employment relationship, we defer to the NHDOL's conclusion if it is supported by the record. *Cf. Appeal of Campaign for Ratepayers Rights*, 133 N.H. at 483, 577 A.2d at 1232. Whether or not we would have reached a different conclusion, based upon the weight of the evidence, is of no consequence since we will not substitute our judgment for that of the NHDOL. *See id.*

■■ Osram next argues that no evidence supports a finding that Kijek had reasonable cause to believe that Osram was acting

unlawfully when he filed the OSHA complaint. Whether an employee had "reasonable cause to believe" is an objective question; namely, whether "a reasonable person might have believed that the employer was acting unlawfully." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 155 (Me. 1991). Osram argues that the NHDOL's findings were based on "Kijek's personal, subjective beliefs and perceptions, and are insufficient to meet the [Whistleblowers' Act's] requirement of objective basis." While a November 1995 investigation of Osram's plant failed to find a violation of OSHA's safety standards, the Whistleblowers' Act does not require an actual violation, but only that the employee's belief that the law was violated was objectively reasonable. *Cf. Appeal of N.H. Dept. of Employment Security*, 140 N.H. at 711-12, 672 A.2d at 703. We conclude that the record supports a finding that Kijek's belief that the heat at the plant was dangerously excessive in violation of OSHA standards was objectively reasonable. Specifically, OSHA stated in a letter to Osram that "some conditions were observed which, although not violative of the standards, are considered significant enough to be brought to your attention with the intent of encouraging your efforts to reduce exposure." Midday temperature readings completed by OSHA ranged from 110 to 174 degrees Fahrenheit in one part of the plant. In a letter to Kijek summarizing OSHA's contact with Osram, OSHA's acting director stated that "the hazards about which you complained are presently being corrected." Moreover, even Kijek's supervisor expressed concern about the heat; Osram's Human Resource Manager testified that after a supervisor had ventured to the second level of the plant, he stated that "he didn't know how this [employee] could work up there" because of the heat.

*III. Exhaustion of Remedies*

Osram argues that Kijek was not entitled to protection under the Whistleblowers' Act because he failed to pursue the proper grievance procedures, as required by RSA chapter 275-E, after his discharge from the company. RSA 275-E:4, I, states in pertinent part:

> Any employee who alleges a violation of rights under RSA 275-E:2 or 3, and who has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment, may obtain a hearing with the commissioner of labor . . . .

Accordingly, RSA 275-E:4, I, establishes that before a remedy can be pursued under the Whistleblowers' Act, the employee must first attempt, through grievance procedures available at the workplace, to have the employee's rights restored.

 We will not decide whether Kijek complied with RSA 275-E:4, I, *i.e.*, whether he failed to grieve his discharge from Osram. It is well settled that in an administrative appeal, the appealing party must first file a motion for rehearing "set[ting] forth fully every ground upon which it is claimed that the decision or order complained of is unlawful or unreasonable." RSA 541:4 (1997). "Issues not raised in the motion for rehearing may not be raised on appeal." *Appeal of Richards*, 134 N.H. 148, 154, 590 A.2d 586, 590, *cert. denied*, 502 U.S. 899 (1991). While Osram cited RSA 275-E:4 in its motion for rehearing, it argued only that "Kijek never exhausted [Osram's] procedures regarding his safety concerns" and therefore Kijek was not entitled to relief under the Whistleblowers' Act. *See* RSA 275-E:2, II. It did not argue, however, that he failed to grieve his discharge, and it accordingly cannot raise that issue on appeal. Furthermore, while the issue of whether Kijek had properly grieved the heat was raised in the motion for rehearing, counsel at oral argument stated that on appeal, Osram was only challenging whether Kijek properly grieved his discharge.

*IV. Remedy*

Finally, Osram contends that the NHDOL erred when it ordered reinstatement of Kijek. RSA 275-E:4, I, provides that the NHDOL has the authority to order an appropriate remedy, including, *inter alia*, reinstatement. The goal of the remedial provisions of the Whistleblowers' Act is to ensure that employees are "made whole" and restored to the position they would have been in absent the employer's unlawful acts. *Appeal of Bio Energy*, 135 N.H. at 521-22, 607 A.2d at 609.

 Osram argues that reinstatement is inappropriate given the long documented history of "animosity" between Kijek and Osram, and given Osram's claim that Kijek filed a fraudulent workers' compensation claim. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (reinstatement may not be appropriate where there has been irreparable damage to employment relationship). In order to properly review issues raised in a chapter 541 appeal, we require the NHDOL to make basic findings of fact so that we may adequately address whether its rulings are reasonable. *See Foote v. State Personnel Comm'n*, 116 N.H. 145, 148, 355 A.2d 412,

414 (1976). While the NHDOL noted that Kijek's testimony indicated a "less than smooth" employment history, it made no findings with regard to the appropriateness of reinstatement as a remedy. Although we affirm the NHDOL's ruling that Osram violated the Whistleblowers' Act, we vacate that portion of its order reinstating Kijek. We remand this case for specific findings and rulings on the issue of whether the breakdown in employer-employee relations is sufficient to deny Kijek's request for reinstatement. Furthermore, we direct the NHDOL, on remand, to consider additional evidence of relevant facts which have occurred since the hearing, solely on the issue of reinstatement.

*Affirmed in part; vacated in part; remanded.*

All concurred.